STATE OF MARYLAND v. JESSIE ALFRED
ARMSTRONG

[No. 47, September Term, 1980.]

* * *

STATE OF MARYLAND v. ANTHONY LAMONT
LESLIE

[No. 105, September Term, 1980.]

*Decided October 10, 1980.*

The cause was argued before MELVIN, WILNER and COUCH,
JJ.

*F. Ford Loker, Assistant Attorney General,* with whom
were *Stephen H. Sachs, Attorney General, Sandra A.*

O'Connor, State's Attorney for Baltimore County, Jeffrey Himmelstein, Assistant State's Attorney for Baltimore County, and Robert W. Lazzaro, Assistant State's Attorney for Baltimore County, on the brief, for appellants.

Michael Braudes, Assistant Public Defender, with whom were Alan H. Murrell, Public Defender, and Thomas J. Saunders, Assistant Public Defender, on the brief, for appellee Armstrong. Richard M. Karceski for appellee Leslie.

WILNER, J., delivered the opinion of the Court.

Two wrongs may not make a right, but they *can* create some sticky issues on appeal, which are what we have here.

The first wrong was committed by the Circuit Court for Baltimore County; it acted precipitously in dismissing pending indictments against appellees when the Court of Appeals filed its first Opinion in *State v. Hicks*, 285 Md. 310 (1979). The State then compounded the error when it aborted its appeals from those actions and attempted to salvage the prosecutions by obtaining new indictments. The question before us is whether the Circuit Court again erred when it frustrated that attempt by dismissing the subsequent indictments.

Maryland Rule 746 a, as it read in June, 1979, provided that "[w]ithin 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723 . . ., a trial date shall be set which shall be not later than 120 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723 . . . ." [1] On June 25, 1979, the Court of Appeals filed its initial Opinion in *Hicks*, in which it concluded that (1) the requirement that a case be brought to trial within 120 days, absent a postponement "for extraordinary cause shown," [2] was mandatory and not

---

1. Effective November 16, 1979, the Court amended Rule 746 a to change the 120-day requirement to 180 days.

2. Section b of the Rule permitted the county administrative judge or a judge designated by him to grant a change of trial date "for extraordinary cause shown." That part of the Rule hasn't changed; but, by Laws of

directory, and (2) the sanction for its violation was dismissal of the charges lodged against the defendant. *See* 285 Md. at 318.

To say that this decision (which overruled the Court's earlier holding in *Young v. State,* 266 Md. 438 (1972), and announced a new, and wholly unexpected, method of enforcing the Rule) caused some consternation among prosecutors and trial courts throughout the State would be the epitome of understatement. It appeared to place in jeopardy dozens — perhaps hundreds — of pending criminal prosecutions, as a result of which the Attorney General, on July 13, 1979, moved the Court to reconsider what it had done. On July 19, 1979, the Court issued a second Opinion, 285 Md. at 334, denying the motion for reconsideration but determining that the rule laid down in the first *Hicks* Opinion should operate prospectively only, "applying only to future criminal prosecutions and only to those pending cases where, as of our mandate in this case, there have been no appearances of counsel or first appearances of defendants pursuant to Rule 723." 285 Md. at 338.

The Court's mandate issued on July 25, 1979; that is the effective date, so to speak, of the *Hicks* interpretation of Rule 746.

The charges against Messrs. Armstrong (No. 47) and Leslie (No. 105) were in the "pipeline" when the first *Hicks* Opinion was filed. Armstrong had been arrested September 23, 1978, and indicted for armed robbery and related offenses on November 6, 1978. He was "arraigned" on November 22, and, on November 30, defense counsel entered his appearance. Trial was scheduled, and postponed, on three occasions: December 20, 1978, because a jury was unavailable;[3] February 26, 1979, because defense counsel was ill; May 1, 1979, because a judge was unavailable. Four

Maryland, 1980, ch. 378, effective July 1, 1980, the General Assembly has authorized the administrative judge to grant a postponement "for *good cause shown.*" (Emphasis supplied.)

**3.** According to the record, it appears that Armstrong had initially requested a court trial, and the December 20 trial date was scheduled on that premise. On December 14, however, he requested a jury trial, and no juries were available on the week of the 20th — Christmas week.

days after the first *Hicks* Opinion was announced — June 29, 1979 — Armstrong filed a motion to dismiss the indictment for failure to bring the case to trial within 120 days. On July 3, 1979, the trial court, without waiting for the Court of Appeals mandate to issue, dismissed the indictment, solely on the basis of Maryland Rule 746, as interpreted in the first *Hicks* Opinion.[4]

The State's initial response to the dismissal was to file an appeal to this Court, which it did on July 18, 1979, the day before the Court of Appeals issued its second Opinion. Had that appeal been prosecuted, in light of the second *Hicks* Opinion, it is likely that the dismissal would have been reversed and the case remanded for further proceedings.[5] But the State chose a different strategy. On August 21, 1979, it dismissed the appeal and, two days later, moved the trial court to reconsider its July 3 decision. That the court declined to do, however, concluding, on September 19, 1979, that it had no authority to reconsider its order. No appeal was taken from that action.

Finding itself then out of court entirely, the State re-indicted Armstrong for the same offenses. Armstrong would have none of that, however, and moved to dismiss the new indictment on the grounds that it represented a deprivation of due process of law, his right to a speedy trial, and his privilege against double jeopardy. The court rejected those claims but, on January 8, 1980, dismissed the indictment "on the issue that I will call res judicata or Maryland Rule 746." The court's theory, more precisely, was that (1) the July 3 dismissal must be regarded as having been with prejudice, and when the State withdrew its appeal, that dismissal became final and binding and thus served to bar a

---

4. The transcript of that proceeding shows that the State argued the distinction between the Constitutional (Sixth Amendment) right to a speedy trial, which requires a balancing test, and a defendant's right under Maryland Rule 746, which does not. It is clear from the court's remarks that it acted only under the Rule. The indictment was dismissed because Armstrong was not brought to trial within 120 days, and not because his Sixth Amendment right was transgressed.

5. A remand would likely have been required because the lower court acted solely on the basis of *Hicks,* which was not applicable.

re-prosecution, and (2) alternatively, as more than 180 days had, by then, elapsed since Armstrong's "arraignment," or the first appearance of counsel, to permit a re-prosecution at that stage would serve only to circumvent the letter, spirit, and intent of Rule 746.

The State's appeal in No. 47 is from that decision, dismissing the second indictment.

The saga of appellee Anthony Leslie raises the same issues. Leslie was arrested September 5, 1978, and, like Armstrong, was charged with armed robbery and related offenses. A formal indictment was returned October 9, 1978, and on October 20 defense counsel entered his appearance and elected a jury trial. Trial was initially scheduled for January 9, 1979, but was postponed, over Leslie's objection, because of a crowded docket — the case could not be reached that day. The same thing occurred on March 16, 1979, the next scheduled date, and trial was reset for July 10, 1979. *Hicks* I, of course, intervened; and, on July 5, 1979, Leslie moved to dismiss the indictment, with prejudice, for failure to "bring him to trial as prescribed by Maryland Rule 746." The delay at that point was 10 months.

Following a hearing on July 10, the court granted Leslie's motion and dismissed the indictment on the basis of the first *Hicks* Opinion. The State filed an immediate appeal — July 11 — but, on August 17, 1979, dismissed the appeal and moved the trial court to reconsider its July 10 order in light of the revised *Hicks*. As with Armstrong, the court refused to reconsider its action on the ground that it had no authority to reopen the dismissal. A new indictment, based on the same alleged offenses, was obtained October 15, 1979; a motion to dismiss was filed November 2; and the motion was granted, for the same reasons expressed in the Armstrong case, on January 9, 1980. This appeal followed.[6]

---

**6.** The record shows that Leslie filed a cross-appeal based upon the court's refusal to grant his motion to dismiss on Sixth Amendment speedy trial grounds, and that he also moved to dismiss the State's appeal on the ground that it was not timely filed. He has argued neither of these questions in his brief, however, and we shall therefore not consider them.

As noted in the preceding discussion, in dismissing the indictments now before us, the court acted upon two theories: (1) that the dismissal of an indictment with prejudice is a final binding judgment (until overturned), and when the State dismissed its appeal, the judgment, even if based on an erroneous construction of the law, became *res judicata,* barring the State from relitigating the issues concluded by it; and (2) that to permit a prosecution at this time, even if founded upon a new indictment, would serve to circumvent, and thus to frustrate the requirement of Rule 746.

As the trial court seemed to recognize, these concepts are closely interrelated; they merely approach the problem from somewhat different perspectives.

The State's perspective is altogether different. Relying primarily on *Irvin v. State,* 276 Md. 168 (1975), it argues that, subject only to double jeopardy constraints, which are not present here, the State is fully at liberty to bring new indictments based upon the same charges that were earlier dismissed, whatever the reason for the dismissal and whether the dismissal was with or without prejudice. We think the State's reliance on *Irvin* is misplaced, however, and its argument much too simplistic. Notwithstanding some rather broad language in the Opinion, *Irvin* dealt with an entirely different issue than that presented here.

In *Irvin,* parts of a multi-count indictment were dismissed by the court prior to trial; the State *nol prossed* the remaining counts and appealed the dismissal. While the appeal was pending, the defendant, Irvin, was re-indicted on similar charges, tried on that second indictment, and convicted. The issue before the Court of Appeals, upon Irvin's appeal from the ultimate conviction, was a jurisdictional one. *Certiorari* was granted to consider the "narrow point" of whether "the State could proceed to trial on the latter indictment *while the appeal on the first was still pending,"* (emphasis supplied) the contention being that the State's appeal from the dismissal of the first indictment, during its pendency, had ousted the trial court of jurisdiction to consider the second. 276 Md. at 170, 171.

The Court concluded that the loss of jurisdiction, asserted by Irvin, extended only with respect to the particular indictment involved in the State's appeal, and did not preclude the State from obtaining a new indictment and proceeding to trial on it. It was in that context — the jurisdictional one based entirely upon the *pendency* of the appeal — that the Court observed (citations omitted) at p. 172:

> "There is no question but that a criminal defendant may be indicted more than once for the same offense ... and that any irregularity *in a prior indictment* may be corrected in a later indictment upon which the defendant may be tried. ... [Emphasis supplied.]

> "If an indictment is dismissed, the order is a final judgment as regards *that* indictment .... and is appealable .... If the State appeals, the indictment which was dismissed comes within the exclusive jurisdiction of the appellate court, but not an indictment which may be returned later." (Emphasis in the original.)

Hopefully with tongue in cheek, the State suggests that the only difference between *Irvin* and the cases *sub judice* is that the State's appeal was still pending in *Irvin* when the new indictments were returned. That, of course, is a crucial difference. The jurisdictional issue, which was all that was considered and decided in *Irvin,* is simply not present when the appeal has been dismissed prior to the return of the subsequent indictment. That alone serves to distinguish *Irvin* and render it inapposite.

More, perhaps, than the holding in *Irvin,* however, the State seeks succor from some of the language used in the Opinion — that quoted above. Those general statements, while inherently true, cannot be read out of context. Whether a new indictment can properly be returned depends, to a large extent, on the circumstances under which the first indictment was dismissed. *Irvin* referred to a dismissal based upon an irregularity in the indictment

itself,[7] and did not address at all, even in the limited context before it, the situation of a dismissal for some more substantive extrinsic reason — by reason of a speedy trial violation, for example, or because the defendant had already been placed in jeopardy for the same offense, or because the statute of limitations had run on the prosecution.

All that was determined in *Irvin* was that the mere pendency of an appeal did not preclude a new indictment. The issue here, of course, is whether the *dismissal* of the appeal, *leaving the lower court judgment intact,* also had that effect, particularly where the judgment rested upon the purported violation of a speedy trial requirement.

The factual circumstances of the cases *sub judice* are, of course, somewhat unusual; but the issue raised by them is not a novel one. It has been addressed in varying contexts and with varying results, in other States.

In some instances, the result has been governed by specific statutory language. In *State v. Rolax,* 479 P.2d 158 (Wash. App., 1970), and *Crockett v. Superior Court,* 535 P.2d 321 (Cal., 1975), for example, statutes that required the dismissal of charges not brought to trial within 60 days expressly barred re-prosecution only in the case of misdemeanors, thus either expressly or implicitly allowing re-indictment in felony cases. *Compare Bryant v. Blount,* 261 So. 2d 847 (Fla. App., 1972), *cert. den.* 267 So. 2d 82, and *State v. Eberhardt,* 381 N.E.2d 1357 (Ohio App., 1978), applying statutes that required a discharge and barred re-prosecution, whether for felony or misdemeanor.

Those cases, because governed by specific statutory provisions, are not especially relevant here. More significant are *Commonwealth v. Whitaker,* 359 A.2d 174 (Pa., 1976); *State v. Johnson,* 217 N.W.2d 609 (Iowa, 1974); and *Commonwealth v. Ludwig,* 345 N.E.2d 386 (Mass., 1976), where, as here, there was no statutory direction in terms of re-prosecution.

---

**7.** The Opinion in *Irvin* does not indicate the reason for the dismissal of the first indictments. The State's brief in the case, however (No. 8, Sept. Term, 1975), suggests that they were dismissed primarily on the ground that they failed to charge a criminal offense.

*Whitaker* involved a Pennsylvania rule requiring trial within 270 days following arrest, and permitting the court to "dismiss the charges with prejudice" in the event of a violation (*see* Pa. R. Crim. P. 1100). On the 268th day, having lost a suppression motion, the State moved, successfully, to *nol pros* the complaint on the ground of lack of evidence. Two months later, it sought to reopen the case by moving to vacate the *nol pros.* The court granted the State's motion but then, on Whitaker's motion, dismissed the charges with prejudice for failure to comply with the 270-day rule. Affirming the dismissal, the Pennsylvania Supreme Court observed that "the purpose of the rule would be wholly frustrated if the position taken by the prosecution here were to be accepted." 359 A.2d at 176.[8] *See also Commonwealth v. Hamilton,* 297 A.2d 127 (Pa. 1972); and *Commonwealth v. Garbett,* 390 A.2d 208 (Pa., 1978). *Compare Commonwealth v. Brightwell,* 406 A.2d 503 (Pa., 1979), and *see* Marshall and Reiter, *A Trial Court Working With Rule 1100,* 23 Vill. L. Rev. 284 (1977-78).

*State v. Johnson, supra,* involved an Iowa statute requiring trial within 60 days. The defendant was initially arrested in December, 1971 for carrying a concealed weapon. On May 15, 1972, the charge was dismissed for lack of speedy trial. It was "reinstated" nine days later, but was dismissed again on October 6, 1972, for the same reason. On October 18, a new information charging the same crime was filed. Johnson again moved to dismiss, but, on that occasion, the court rejected his motion and he was ultimately brought to trial within 60 days of the new information and convicted. Reversing, the Court observed (217 N.W.2d at 612):

> "If the State is free to commence repeated prosecutions for the same offense following undue delay in going to trial, subject only to the running

---

8. Unlike the situation in Maryland (*see* Maryland Rule 782), it appears that, in Pennsylvania, court approval was required for a *nolle prosequi* and that the State, with court approval, could subsequently vacate the *nolle prosequi.* Although the procedure used in *Whitaker* — entering a *nolle prosequi* and then seeking to vacate it — is not precisely the same as a dismissal followed by re-indictment, it does, in our judgment, raise essentially the same issue.

of the statute of limitations, there is nothing to deter delays at prosecution's convenience in pushing forward to trial, and defendant's constitutional right to a speedy trial is rendered largely meaningless."

Upon this basis, the Court concluded that another statute expresssly permitting re-prosecution of felony charges following a dismissal would not apply to a dismissal "based on denial of a speedy trial." *Id.* at 612.

The Massachusetts court reached the same conclusion in *Ludwig, supra.* The defendant there was initially charged with larceny and conspiracy in the State's District Court. The case came up for trial on November 28, 1973, at which time the defendant requested a jury trial, the State asked for a postponement, and, over Ludwig's objection, the court continued the case until February 6, 1974. This was in violation of a statute prohibiting a continuance, over objection, for longer than 10 days. The case came on for trial again on February 21, at which time the court granted a defense motion to dismiss the charge for lack of a speedy trial.[9] In May, 1974, Ludwig was indicted for the same offenses dismissed by the District Court. His motions to dismiss were denied, and he was ultimately brought to trial in the Superior Court and convicted. Reversing, the Court concluded that the interests sought to be protected by the guaranty of a speedy trial "are best served by a rule which treats a dismissal based on the denial of that right as an absolute discharge with prejudice against the Commonwealth," and thus held that the dismissal in the District Court "is a bar to any subsequent prosecution for the same offense...." 345 N.E.2d at 389.

Each of these courts — Pennsylvania, Iowa, and Massachusetts — relied in part on the concept set forth in § 4.1 of the ABA Standards Relating to Speedy Trial (Approved Draft 1968). That section provides, in relevant part:

---

**9.** The 10-day continuance limit was viewed by the trial court, and the appellate court, as being in the nature of a speedy trial rule.

"If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the consequence should be absolute discharge. Such discharge should forever bar prosecution for the offense charged and for any other offense required to be joined with that offense."

In the Commentary to that section, it is noted that the effect of a discharge is often not dealt with explicitly in speedy trial statutes, but that,

"[t]he position taken here is that the only effective remedy for denial of speedy trial is absolute and complete discharge. If, following undue delay in going to trial, the prosecution is free to commence prosecution again for the same offense, subject only to the running of the statute of limitations, the right to speedy trial is largely meaningless. Prosecutors who are free to commence another prosecution later have not been deterred from undue delay."

Not all courts have taken the view expressed in the ABA Standard. *See, for example, McGee v. Sheriff,* 470 P.2d 132 (Nev., 1970); *also* Annot., *Speedy Trial — Reindictment,* a somewhat dated (1953) analysis appearing in 30 A.L.R.2d 462. However, the more recent cases, for the most part, have adopted it, and for good reason. It is founded upon common sense and sound principles of public and jurisprudential policy.

Accordingly, we conclude that, in the absence of any statute validly mandating a different result,[10] when a criminal charge is dismissed for want of a speedy trial, whether based on the Sixth Amendment or Rule 746, the State is not at liberty to revive the prosecution by means of a new charging document. It may, if otherwise permitted, appeal the dismissal; but it may not simply ignore it.

---

**10.** *See, for example,* the Intrastate Detainer Act, Md. Ann. Code art. 27, § 616S (c), commented on in *Parks v. State,* 41 Md. App. 381 (1979), *aff'd on other grounds* 287 Md. 11 (1980).

The concept upon which we rely is not precisely that of *res judicata,* although it embodies most of the essentials of that broader doctrine. The dismissal of the indictments on the basis of *Hicks* clearly amounted to final judgments upon the same claim between the same parties. That the judgments may have been erroneous ones would be of no consequence in determining the applicability of *res judicata. See Beall v. Pearre,* 12 Md. 550, 566 (1859); *Thomas v. Malster,* 14 Md. 382, 388 (1859); *Gibbs v. Didier,* 125 Md. 486, 499 (1915); *Annapolis Urban Renewal Authority v. Interlink, Inc.,* 43 Md. App. 286, 297-98 (1979); 2 *Freeman on Judgments,* 5th Ed., § 727. The normal remedy for correcting error in a final judgment is an appeal, not a new action. As stated by Freeman, *supra,* "Neither can the force of a judgment as res judicata be destroyed or impaired by showing that it was clearly erroneous and ought not to have been rendered, if the court had jurisdiction. . . ."

The only element of *res judicata* that is arguably lacking here is that which requires the prior judgment to be one that was rendered "on the merits." Traditionally, civil judgments of nonsuit, *non prosequitur,* or *nolle prosequi,* and dismissals for failure to prosecute the action diligently have not been regarded as rendered on the merits sufficient to estop a subsequent action on the same claim. *See* 2 *Freeman on Judgments,* 5th Ed., §§ 726, 751, 753; *McQuaid v. United Wholesale Aluminum Supply Co., Inc.,* 31 Md. App. 580, *cert. den.* 278 Md. 737 (1976). But, as Freeman also notes (§ 724), the term "merits,"

". . . may refer to the merits of the whole case or controversy between the parties, or it may be restricted to the merits of some particular issue of law or fact, the adjudication of which may prevent a consideration and determination of the substantial rights of the parties upon the whole controversy. *There is no doubt about the conclusiveness of the judgment as to the matters actually adjudicated even though it is a judgment on the merits only in the latter restricted sense. . . ."* (Emphasis supplied.)

The "restricted sense" of the requirement alluded to by Freeman has special relevance, we think, in the context of a dismissal based upon lack of a speedy trial, for the reasons already noted. The right of a defendant to have criminal charges lodged against him resolved promptly is of Constitutional dimension and is imbued with public policy considerations of the highest magnitude. Both the Court of Appeals, through Rule 746, and the General Assembly, through Md. Ann. Code art. 27, § 591, have set specific limits in that regard. Effective enforcement of that right, and those limits, even in the absence of *Hicks*, requires that a dismissal on speedy trial grounds, which does "prevent a consideration and determination of the substantial rights of the parties upon the whole controversy," be deemed a judgment on the merits, whatever the result might be in a civil context to which these special considerations are inapplicable.

Accordingly, we conclude that the State was barred from re-prosecuting appellees on the charges earlier dismissed, and that the second indictments were properly dismissed.

*Judgments affirmed; appellants to pay the costs.*