STATE OF MARYLAND *v.* ALAN JAY GLENN,
MICHAEL LEE McKINNEY AND WAYNE
MELVIN WOLFENSBERGER

[No. 694, September Term, 1982.]

*Decided March 2, 1983.*

The cause was argued before GILBERT, C. J., and LISS and
BISHOP, JJ.

*Carmina Szunyog, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Raymond F. Ciarrocchi, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*Richard J. Guth,* with whom was *Jerome James LaCorte* on the brief, for appellees.

BISHOP, J., delivered the opinion of the Court.

The State of Maryland appeals an order of the Circuit Court for Prince George's County dismissing criminal charges because of violations of Maryland Rule 746.

On April 30, 1981, the appellees were charged in District Court with distribution of obscene matter. Jury trials were prayed. On July 17, 1981, the appellees were arraigned in the Circuit Court. On November 17, 1981, the 122nd day after arraignment, the cases were called for trial. Because of what the State considered a substantive defect in the charging documents, and the refusal of the appellees to agree to an amendment in accordance with Rule 713 a, the State, over appellees' objection, *nol prossed* all three cases and refiled them under new charging documents in the District Court on the same day. On January 11, 1982, all three appellees were arraigned under the new charging document and their counsel entered his appearance. On February 18, 1982, the appellees filed a motion to dismiss based on violations of Maryland Rule 746 and their constitutional speedy trial rights. On March 1, 1982, 226 days after the first arraignment and 58 days after the second, a hearing was held, apparently because the Assistant State's Attorney was concerned about the 180 day period running out on March 5, 1982. The Assistant State's Attorney calculated that the original charges had been pending for 130 days, (actually the correct figure is 122), then added a number of days that the new charges had been pending, 40 days (actually 43 days as of February 23rd), and concluded that he had only 10 days in which to try the cases before *State v. Hicks,* 285 Md. 310

(1979), would require dismissal of the charges. In any event, the fact is that on March 1, 1982, the three appellees prospectively waived the 180 day requirement. That waiver had no effect on the basis for their then pending motions to dismiss, which was that they were not brought to trial within 180 days of the first arraignment and entry of counsel's appearance on July 17, 1981. On April 8, 1982, the lower court heard argument on the Motion to Dismiss. On May 5, 1982, the court filed a written order and memorandum dismissing the charges against the three appellees because their trials were not held within the 180 days required by Maryland Rule 746.

## The Law

In its opinion the trial court succinctly summarized the contentions of the State:

> "The State alleges that each charging document has a life of its own, if the preceding charge was nol pros (sic) because of an intrinsic defect in the document itself. In the alternative, the State argues that in computing the time for this rule, the days counted should only include those where the Defendant was subject to the jurisdiction of this court (i.e. the State does not want to include the time between November 17, 1981 and January 11, 1982.[1]

Judge Woods responded to these issues, with an excellent analysis of *Irvin v. State,* 276 Md. 168 (1975) and the interpretation placed on *Irvin* by this Court in *State v. Armstrong,* 46 Md. App. 641 (1980). We adopt that analysis as part of this opinion:

> "Essentially both of these contentions rest upon the 'independent life' argument that the State derives from *Irvin v. State,* 276 Md. 168 (1975). In

---

**1.** Under this method of "piggybacking" the 180 day calculation, the State contends that it had until March 7, 1982, to bring the defendant to trial. This argument for the State has not been made moot by the passage of time as the defendant waived all future Hicks claims on March 1, 1982.

*Irvin,* the Court of Appeals held that a second indictment and conviction was valid even though this occurred while an appeal was pending on the dismissal of the original indictment. The court there stated:

There is no question but that a criminal defendant may be indicted more than once for the same offense, and that any irregularity in a prior indictment may be corrected in a later indictment upon which a defendant may be tried.

If an indictment is dismissed, the order is a final judgment as regards *that* indictment, and is appealable. If the State appeals, the indictment which was dismissed comes within the exclusive jurisdiction of the appellate court, but not an indictment which may be returned later. . . .

*Id.* at 172-73 (citations omitted). Broadly construing this language, it seemingly indicates that each indictment or charging document is independent of all others.

Such a broad interpretation of *Irvin* was rejected in *State v. Armstrong,* 46 Md. App. 641 (1980), however the State still has salvaged an argument for the 'independent life' of indictments from the dicta there. In *Armstrong,* the court held that a second indictment should be dismissed when a previous indictment on the same charge had been adjudicated on the basis of *Hicks.* In the instant case, the State stresses the distinction that *Armstrong* drew between that case and *Irvin.* On this point, the court comments:

Hopefully with tongue in cheek, the State suggests that the only difference between Irvin and the cases sub judice is that the State's appeal was still pending in Irvin when the new indictments were returned. That, of course, is a crucial difference. The jurisdictional issue,

which was all that was considered and decided in Irvin, is simply not present when the appeal has been dismissed prior to the return of the subsequent indictment. That alone serves to distinguish Irvin and render it inapposite.

More, perhaps, then the holding of Irvin, however, the State seeks succor from some of the language used in the Opinion — that quoted above. Those general statements, while inherently true, cannot be read out of context. Whether a new indictment can properly be returned depends, to a large extent, on the circumstances under which the first indictment was dismissed. Irvin referred to a dismissal based upon an irregularity in the indictment itself, and did not address at all, even in the limited context before it, the situation of a dismissal for some more substantive extrinsic reason — by reason of a speedy trial violation, for example, or because the defendant had already been placed in jeopardy for the same offense, or because the statute of limitations had run on the prosecution.

All that was determined in Irvin was that the mere pendency of an appeal did not preclude a new indictment. The issue here, of course, is whether the dismissal of the appeal, leaving the lower court judgment intact, also had that effect, particularly where the judgment rested upon the purported violation of a speedy trial requirement.

*State v. Armstrong,* 46 Md. App. at 647-48 (emphasis added). Further, the *Armstrong* case suggests that the indictments in *Irvin* were dismissed primarily because they failed to charge a criminal offense.

The State argues, based on the underlined language above, that the indictments for *Hicks*

purposes are independent of each other when they are nol pros for reasons intrinsic to the charging document itself. However, the State has failed to read both the preceding and subsequent paragraphs which interpret *Irvin* as being limited to questions of jurisdiction. The court believes that *Irvin* must be limited to matters of jurisdiction, as the extension of this concept into *Hicks* calculations would produce a myriad of inconsistencies."

We do not agree, however, with the trial court when it concludes that:

"The underlying consideration in both Rule 746 and speedy trial requirements is to prevent the defendant from suffering undue delay or harrassment. . . . It is difficult to contend that the defense is less prejudiced by a delay because the State is of pure intent in one instance while in another it is trying to circumvent Rule 746."

The underlying purposes for Maryland Rule 746 and the constitutional right to a speedy trial are different. In *State v. Hicks,* 285 Md. 310 (1979) the Court of Appeals discussed in detail the purposes for Maryland Rule 746 when that Court stated with great clarity:

"Section 591 is plainly a declaration of legislative policy designed to obtain prompt disposition of criminal charges; its enactment manifested the legislature's recognition of the detrimental effects to our criminal justice system which result from excessive delay in scheduling criminal cases for trial and in postponing scheduled trials for inadequate reasons. Judge Jerrold Powers, speaking for the court, in *Guarnera v. State,* 20 Md. App. 562, 318 A.2d 243 (1974), highlighted the problem underlying enactment of § 591 in these forceful words:

'Postponement of cases from dates scheduled for trial is one of the major factors contributing

to delay in the administration of justice, civil as well as criminal. Courts and court supporting services spend substantial time "spinning their wheels", in rescheduling cases. Available court time is lost. The time of attorneys and witnesses is lost. Witnesses themselves are lost. Those who are not are put to severe inconvenience as well as actual loss, and end up in despair at the frustrations of being involved in the trial of a case in the courts. The very image of the judicial system is in serious jeopardy. Public confidence in the courts as instruments of the people is impaired. Judges and lawyers cannot blame the "system", for they are the people who run that system.

When the Legislature has expressed the will of the people [in § 591] by saying that the date established for the trial of a criminal case shall not be postponed except for extraordinary cause, and has denied all judges but the administrative head of the court authority to exercise even that curtailed power, the message should be loud and clear to the bench, the bar, parties, witnesses, and to the public, that trials must not and will not be postponed for ordinary reasons.

And all to whom this message has been sent must understand that it makes not the slightest difference whether a continuance requested is the fifth, the third, or the very first — the reasons for it must satisfy the administrative judge that they meet the test of extraordinary cause. All persons concerned with the trial of a criminal case in the courts of Maryland must be held to know that, barring good cause of an extraordinary nature, the case will go to trial on the date scheduled. And all persons concerned must be entitled to rely upon that knowledge."

Article 27, section 591, Annotated Code of Maryland (1981

Repl. Vol.) is the legislative predecessor for Maryland Rule 746. The original version of the statute, passed in 1971 (Ch. 212), permitted postponement for extraordinary cause. In July 1980 the statute and rule were amended to change the standard from "extraordinary" cause to "good" cause. The statutory amendment became effective July 1, 1980. 1980 Md. Laws, Ch. 378. The amendment to Rule 746 became effective July 3, 1980.

The time period originally prescribed by section 591 was six months. 1971 Md. Laws, Ch. 212 Rule 746, effective July 1, 1977, shortened the period of 120 days, but was amended to extend the period to 180 days, effective November 16, 1979. The period in section 591 was amended from "six months" to "180 days" effective 1980, Md. Laws, Ch. 378.

The purpose of Rule 746 was not solely to implement the Sixth Amendment speedy trial rights. *State v. Hicks, supra,* 285 Md. at 320.

In *State v. Lattisaw,* 48 Md. App. 20 (1981) Judge Wilner pointed out for this Court:

> "Although the dissent in *Hicks* viewed the requirements of Rule 746a primarily from the perspective of the defendant — as an extension of his Constitutional right to a speedy trial — the majority looked upon it more from a societal point of view, as a device to alleviate the problems caused to the criminal justice system by delays in initially scheduling cases for trial and by the inappropriate postponing of scheduled trial dates. *See* the discussion at pp. 316-318 of 285 Md. Both aspects are, of course, important; the point we make is that the rule was not intended solely to confer new rights upon defendants, but also hold their feet to the fire." *Id.* at 27.

The trial court in its reliance on *Armstrong, supra,* apparently overlooked that our holding in that case affirming dismissal of charges under Maryland Rule 746 was limited to a prior dismissal for want of a speedy trial. 46 Md. App.

at 651. Also, as we pointed out in *State v. Weaver,* Md. App. (filed Nov. 5, 1982); "The State will not be permitted to enter a stet so as to toll the 180 day provision of Rule 746 and then restart the 180 day rule at a later date more convenient to the State." The same reasoning would apply to the entry of a *nolle prosequi* made for the same purpose. In this case the entry of a *nolle prosequi* to the first charging document was implicitly for the purpose of correcting, through a second charging document, a substantive defect in the first. It is this that distinguishes the case before us from *Armstrong, supra,* and *Commonwealth v. Whitaker,* 359 A.2d 174 (Pa. 1976) which was cited with approval in *Armstrong.*

In *Whitaker,* the State, lacking sufficient admissible evidence to go to trial, entered a *nolle prosequi* two days before the expiration of the time period mandated by the Pennsylvania Rules of Criminal Procedure. Two months later, it moved to vacate the *nolle prosequi* and go to trial. The trial court dismissed all charges with prejudice and the Supreme Court of Pennsylvania affirmed, on grounds that the prosecution's motion, if granted, would frustrate the purpose of the Pennsylvania prompt trial rule. It is important to emphasize that the purpose of Pennsylvania's rule is different from that of Maryland's rule. While the Court of Appeals of Maryland has explicitly held that "the time limits prescribed by Rule 746 are not . . . the measure of the Sixth Amendment right to a speedy trial," *State v. Hicks, supra,* 285 Md. at 320, the Supreme Court of Pennsylvania held in *Whitaker* that:

> "Rule 1100 provides the one method (as opposed to *Barker v. Wingo's* 'balancing test') by which the courts of Pennsylvania are to determine whether an accused's constitutional right to a speedy trial has been violated. The test mandated by Rule 1100 is the only test to be applied in Pennsylvania to determine a speedy trial claim. It was not meant to be applied in addition to *Barker's* 'balancing test'. It represents this Court's determination that the 'balancing test' announced in *Barker* provides only

> the 'minimum standards guaranteed by the Sixth and Fourteenth Amendments,' and that such minimum standards are not adequate to provide Pennsylvania criminal defendants the protection guaranteed by the constitution of this Commonwealth."

*Commonwealth v. Whitaker, supra,* 359 A.2d at 176.

*Commonwealth v. Ardolino,* 450 A.2d 674 (Pa. Super. 1982), referred to us by the State during oral argument, is similarly distinguishable. In that case the prosecution entered a *nolle prosequi* of its first criminal complaint against the defendant, and withdrew its second complaint against him, due to defects in the two charging documents. The case then proceeded to trial on a third complaint, on which the defendant was convicted. The Pennsylvania Superior Court held that because the defects in the first two charging documents were not substantive, they could have been amended without dismissing the case. Because the cases were improperly dismissed, the time period ran from the first complaint, not from the third. The time period from the first complaint expired before trial commenced, so the judgment of sentence had to be vacated. In so ruling, the Court employed the same rationale used in *Whitaker:* that the purpose for institution of the State's speedy trial rule was "to more effectively protect the right of criminal defendants to a speedy trial." *Id.* at 677. It is clear that when the foregoing is compared with *Hicks, supra,* (especially considering the dissent in *Hicks*), the holdings in the above Pennsylvania decisions cannot be followed uncritically by Maryland appellate courts.[1]

It is conceded and we agree that the failure of the first complaint in these cases *sub judice* to include the word "knowingly" was a substantive defect and, therefore, amendment was subject to Maryland Rule 713 a. Although

---

1. The mandatory criminal trial time limit rules in both Johnson, supra (Iowa) and in Commonwealth v. Ludwig, 345 N.E.2d 386 (Mass. 1976), (both cited with approval in Armstrong), were interpreted by the appellate courts in those states as implementing constitutional speedy trial rights.

Maryland Rule 713 a does not authorize refiling of the charges without prejudice to the State as Pennsylvania Rule 150 does, we believe that where this situation exists it is proper to consider the substantive nature of the defect when attempting to determine good cause under Maryland Rule 746. That there were substantive defects certainly permits the inference that the State *nol prossed* the charging documents in good faith. The record indicates that the error was not discovered until the day before the November 17, 1981 trial date, at which time the prosecution promptly notified defense counsel. Even though the State promptly corrected the errors by immediately filing new charging documents, commencement of trial was unnecessarily delayed beyond the 180 day period. The failure of the State to bring the cases to trial during the ensuing 58 days after the filing of the corrected charging documents amounted to a violation of Maryland Rule 746 which required dismissal of these charges.

*Judgments affirmed.*
*Costs to be paid by Prince George's*
    *County.*