745 A.2d 1142

**Charles BAKER**

v.

**STATE of Maryland.**

**No. 1638, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Feb. 15, 2000.

---

284

Claudia A. Cortese, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Zoe M. Gillen, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and David R. Ruark, State's Atty. for Wicomico County, Salisbury, on the brief), for appellee.

Submitted before MOYLAN, SALMON and THIEME, JJ.

MOYLAN, Judge.

The appellant, Charles Baker, was convicted in the Circuit Court for Wicomico County by Judge Donald C. Davis, sitting without a jury, of child abuse. On this appeal, he raises the single contention that his statutory right to be tried within 180 days after the first appearance of counsel was violated.

### The Chronology

The appellant was initially charged by a criminal information with the offenses of 1) child abuse, 2) reckless endangerment, 3) the distribution of cocaine, 4) the administering of a controlled dangerous substance, 5) the possession of cocaine, and 6) contributing to the delinquency of a minor. The

information was filed on September 3, 1998, and the appearance of the Wicomico County Public Defender on behalf of the appellant was entered on September 14. The 180–day period for commencing the trial prescribed by Md. Rule 4–271 and by Art. 27, § 591 began to run on September 14 and would normally have expired on March 14, 1999.

The case against the appellant was initially scheduled for trial on February 23, 1999. On that date, nineteen days before the expiration of the 180–day limit, the State *nol prossed* all counts against the appellant. Six days later, on March 1, the appellant was indicted on the single charge of child abuse.

The appellant's trial was not held within the initial 180–day period. Because of that, the appellant filed on May 24 a motion to dismiss for a violation of Md. Rule 4–271 and Art. 27, § 591. That motion was denied. The appellant was subsequently tried and convicted on August 9, 1999, well within a new 180–day limit measured from the commencement of the March 1, 1999 indictment but well beyond the 180–day limit measured from the commencement of the first set of charges.

### The Claim

The appellant claims that the February 23, 1999 *nol pros* of the original criminal information did not toll the running of the 180–day time limit for trial that began on September 14, 1998 and would have terminated on March 14, 1999. The State, on the other hand, argues that the February 23, 1999 *nol pros* finally terminated all charges that had been part of the original criminal information, including the charge of child abuse, and that the indictment for child abuse of March 1, 1999 was a new and pristine criminal charge with a new 180–day window of triability open to it.

### The Controlling Case Law

The relevant universe of case law controlling this question consists of four opinions, three from the Court of Appeals and one from this Court. They are *Curley v. State*, 299 Md. 449,

474 A.2d 502 (1984); *State v. Glenn,* 299 Md. 464, 474 A.2d 509 (1984), decided the same day as *Curley; State v. Brown,* 341 Md. 609, 672 A.2d 602 (1996); and *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997). All three of the opinions by the Court of Appeals were authored by Judge Eldridge and maintain, therefore, a solid doctrinal consistency and an unambiguous message. In terms of 1) "tacking on" a second set of replacement charges to an earlier but *nol prossed* charging document versus 2) starting the 180–day count afresh with the filing of the new charges, the "tilt" of the Maryland law is decidedly against the position urged by the appellant in this case.

## Three Ways of Counting the Days

The doctrinal point of departure is *Curley v. State.* In it, Judge Eldridge thoroughly surveyed the law throughout the country that has considered "the interaction of a *nol pros,* or its functional equivalent, with a statute or rule setting a time limit for the trial of criminal cases." 299 Md. at 455, 474 A.2d 502. He found that "the approaches taken in other jurisdictions can be divided into three broad, if not always clearly bounded, categories." *Id.*

The first of those categories, that most favorable to a defendant claiming a violation of a statutory speedy trial right, is that "in which the running of the statutory period for trial begins on the date of the original charging document (or arraignment or first appearance of counsel), is neither tolled nor ended by the entry of a *nol pros,* and the same period continues to run when the defendant is reindicted on the same charge." 299 Md. at 455–56, 474 A.2d 502. The original holding of this Court in *State v. Glenn,* 53 Md.App. 717, 456 A.2d 1300 (1983), subsequently reversed by the Court of Appeals, fell into that category. Judge Eldridge described, 299 Md. at 456, 474 A.2d 502, the reasoning behind that doctrinal approach:

The rationale for this approach appears to be that the state should not be permitted to avoid the effect of the running of the speedy trial period through the entry of a

*nolle prosequi.* These cases take the view that where the identical charge is refiled, " 'it must be regarded as if there had been no dismissal of the first [complaint] ..., or as if the second ... had been filed on the date of the first.' "

The second approach is a modest variation of the first. According to it, the pertinent time period begins to run from the filing (or arraignment or first appearance of counsel) of the initial charges. The reasoning behind that approach is that "it 'would undercut the implementation of the speedy trial statute unless, in computing time under ... [the statute], the defendant's time pending trial under the original indictment is included with time pending trial under the reindictment.' " 299 Md. at 457–58, 474 A.2d 502. Under that second approach, however, the running of the time period is tolled "for the period during which no indictment is outstanding," to wit, for the period between the entry of the *nol pros* and the reindictment. The Court of Appeals, 299 Md. at 458, 474 A.2d 502, explained the tolling rationale:

[T]he cases taking the tolling approach hold that the period of time between the two indictments should not be counted because, "[w]hen a charge is *nolle prossed* ..., there is no charge pending against" the defendant, and that "the speedy trial statute runs only when a charge is pending against a defendant."

"Cases in the third category take the position that when criminal charges are *nol prossed* and later refiled, the time period for commencing trial ordinarily begins to run anew after the refiling." 299 Md. at 458, 474 A.2d 502. Even under that third approach, however, there is a generally recognized exception for cases "where the prosecution's action is intended or clearly operates to circumvent the statute or rule prescribing a time limit for trial." 299 Md. at 459, 474 A.2d 502. There is a requirement that the prosecution be acting in good faith. Bad faith does not consist of outmaneuvering an uncooperative trial judge. Bad faith, in this context, consists only of purposefully circumventing the 180–day trial requirement.

## Maryland Chooses the Third Approach

■ Subject to that exception, the Court of Appeals concluded that "the approach taken by cases in the third category is preferable." It explained, 299 Md. at 459–60, 474 A.2d 502, how the running of the 180–day period would be computed pursuant to that third approach, which is now the controlling Maryland law:

Ordinarily, *treating the 180–day period as beginning to run anew after the refiling of the charges is in accord with Maryland law.*

The courts which consider the time during the initial prosecution which has been *nol prossed,* whether or not the time between prosecutions is regarded as tolled, are to some extent treating the second prosecution as a continuation of the first prosecution. This, however, is inconsistent with the Maryland law regarding a *nol pros. Under our decisions, when an indictment or other charging document is nol prossed, ordinarily "the case [is] terminated."*

. . .

Normally *the effect of a nol pros is as if the charge had never been in the first place.* In light of this, *the only existing prosecution or case is that begun by the new charging document. It is the trial under that prosecution which must be timely commenced.*

(Emphasis supplied; citations and footnote omitted).

■ This then is the norm—the accepted way of counting to 180. When earlier charges are *nol prossed* and new charges are subsequently filed, the new charges have a life of their own. A new and independent 180–day count begins with respect to them. The *nol-prossing* of initial charges, therefore, is not an occasion for skepticism or suspicion. Under the third approach, chosen by Maryland, it is a legitimate and accepted way of doing prosecutorial business.

■ There is, to be sure, an exception. As an attendant aspect of the third approach, however, the burden is not on the prosecutor to persuade a skeptical court that the norm

applies. The burden is on the defendant to establish that the exception to the norm applies. At issue is the underlying psychological attitude with which these matters are viewed.

### The Two–Pronged Exception to the Norm

■ The appellant does not contend that this third approach, as adopted by *Curley v. State,* is not the controlling Maryland law. He contends, rather, that he is entitled to the *Curley* exception. In its ultimate holding, *Curley,* 299 Md. at 462, 474 A.2d 502, clearly articulated both the general rule and a two-pronged exception to it:

> We hold, therefore, that when a circuit court criminal case is *nol prossed,* and the state later has the same charges refiled, the 180–day period for trial prescribed by § 591 and Rule 746 ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution. *If,* however, it is shown that *the nol pros had the purpose or the effect of circumventing the requirements* of § 591 and Rule 746, *the 180–day period will commence to run with the arraignment or first appearance of counsel under the first prosecution.*

(Emphasis supplied).

### There Was No Purpose to Circumvent

In this case, there is no question that the *nol pros* did not have the **purpose** of circumventing the 180–day requirement. At the outset of the hearing on the appellant's motion to dismiss, the prosecutor averred to the court his subjective state of mind at the time of entering the *nol pros:*

> [I]nitially, when this case was *nol prossed* on February 23, 1999, I can indicate to the Court that actually *the 180 day Rule had never entered into my mind.*

(Emphasis supplied). In denying the motion to dismiss, Judge Davis implicitly accepted as a fact that the prosecutor had no deliberate purpose to circumvent the 180–day rule.

## What Is a Necessary Effect?

It is the second prong of the exception that concerns us here, to wit, whether the *nol pros* had the **necessary effect** of circumventing the rule. The four opinions that constitute our relevant universe of controlling case law afford us, in combination, a firm grasp on what is meant by the **necessary effect** of circumventing the 180–day rule. *Curley v. State* gives us the quintessential example of when a *nol pros* will, indeed, have the necessary effect of circumventing the rule. In that case, the *nol pros* was entered on the 180 [th] day available for trial under the indictment. Even as of that day, the State was not prepared for trial. No witnesses were present; the defendant was not present; defense counsel was not present. Had the *nol pros* not been entered, the prosecution would necessarily have been dismissed for a violation of the 180–day rule. That was the extreme situation that caused the Court of Appeals to conclude:

> In reality, *the prosecution had already lost this case* under § 591 and Rule 746 *when the nol pros was filed.* Regardless of the prosecuting attorney's motives, *the necessary effect of the nol pros was an attempt to evade the dismissal* resulting from the failure to try the case within 180 days.

299 Md. at 462–63, 474 A.2d 502 (emphasis supplied). In its earlier statement of the exception, *Curley* qualified the verb "circumvents" with the limiting adverb "necessarily."

> Where the state's action *necessarily circumvents* the statute and rule prescribing a deadline for trial, this should be sufficient to continue the time period running with the initial prosecution.

299 Md. at 461, 474 A.2d 502 (emphasis supplied).

As the subsequent cases make clear, the Court of Appeals has drawn a critical distinction between 1) a *nol pros* that merely has the **actual effect** of carrying a trial beyond the 180–day limit and 2) a *nol pros* that has the **necessary effect** of carrying a trial beyond the 180–day limit. Only the latter will foreclose the trial from going forward. The cases, moreover, have adopted a very narrow interpretation of the modifying adjective and adverb **necessary** and **necessarily.**

*State v. Glenn,* 299 Md. 464, 474 A.2d 509 (1984), was filed the same day as was *Curley v. State.* Under the first set of charging documents in *Glenn,* the State had until January 12, 1982 to bring the case to trial. Trial was scheduled for November 17, 1981. When the State became aware that the charging documents were flawed because of their failure to spell out the requirement of *scienter* and the defense objected to an amendment of the charges, the State correctly concluded that "the amendment was a matter of substance and could not be made over an objection." 299 Md. at 465, 474 A.2d 509. Accordingly, on the day the case was scheduled for trial, the State *nol prossed* the charges. Corrected charging documents were filed the same day.

The ultimate and actual effect of the combined *nol pros* and recharging was that the trial did not take place within the initial 180–day period. Because of that, the trial judge agreed with the defendants that there had, therefore, been a violation of Art. 27, § 591 and of Md. Rule 746. The charges were accordingly dismissed with prejudice. This Court affirmed that dismissal by the trial court. *State v. Glenn,* 53 Md.App. 717, 456 A.2d 1300 (1983). The Court of Appeals granted *certiorari* and reversed the decision of this Court. It pointed out that the norm is for the running of the 180–day period to begin anew with the refiling of new charges. The limited exceptions to that norm are when either 1) the purpose or 2) the necessary effect of the *nol pros* is to circumvent the 180–day rule.

Because the original charges were flawed, it was clear that the State had a legitimate purpose, other than circumventing the 180–day requirement, in replacing the flawed charging documents. It was not, therefore, the purpose of the State to evade or circumvent the rule:

> The only exception recognized in *Curley* was where the prosecution's purpose in filing the *nol pros,* or the necessary effect of the *nol pros,* was to circumvent the requirements of § 591 and Rule 746. Consequently, unless the cases at bar fall within this exception, there was no violation of § 591 and Rule 746.

In the instant cases *the prosecuting attorney's purpose in nol prossing the charges was not to evade § 591· and Rule 746.* The record clearly establishes, with no basis for a contrary inference, that *the charges were nol prossed because of a legitimate belief that the charging documents were defective* and because the defendants' attorney would not agree to amendment of the charging documents.

299 Md. at 467, 474 A.2d 509 (emphasis supplied).

## Whether an Effect is Necessary is Measured By Looking from the Time of the *Nol Pros* Forward

Because the *nol pros* was entered at a time when fifty-seven days yet remained within the original 180–day period, the *nol pros* self-evidently did not have the **necessary** effect of circumventing the 180–day rule. The opinion in *State v. Glenn* carefully distinguished the necessary effect of the *nol pros* in the *Curley* case from the absence of such an effect in the *Glenn* case, wherein there was no theoretical reason why a trial could not still have been held within the remaining fifty-seven-day period:

Unlike the situation in *Curley*, the necessary effect of the *nol pros* in these cases was not to circumvent § 591 and Rule 746.... *If the cases had not been nol prossed, and if for some reason trial had not proceeded when the cases were called on November 17*[th], *there remained fifty-seven days before the expiration of the 180–day deadline.* In *Curley*, if the case had not been *nol prossed* on the 180th day, it necessarily would have been dismissed for a violation of § 591 and Rule 746. This is not the situation in the present cases. *The effect of the nol pros in the present cases was not necessarily to evade the requirements* or sanction of § 591 and Rule 746.

299 Md. at 467, 474 A.2d 509 (emphasis supplied). *And see cf. State v. Phillips*, 299 Md. 468, 474 A.2d 512 (1984).

In the *Curley* case, if the *nol pros* on the 180th day had not been entered, the **only** alternative would inevitably have been a dismissal of the charges with prejudice for non-compliance

with the 180–day rule. There was no way that the trial could possibly have gone forward on that day. As *Curley* explained, 299 Md. at 462, 474 A.2d 502:

> In the instant case, the *nol pros* clearly circumvented the requirements of § 591 and Rule 746. *When the nol pros was entered* on March 23, 1981, which was the final day for trial, *it was too late for compliance with § 591 and Rule 746.* At the time a trial date had not even been assigned. *The case could not have been tried on March 23 ${}^{rd}$,* as the defendant, his counsel, and witnesses were not present. There was no reason for them to have been present, as March 23 ${}^{rd}$ was not the assigned trial date.

(Emphasis supplied).

■ In *State v. Glenn,* by contrast, it was not the situation that the only alternative to the granting of the *nol pros* on the 123 ${}^{rd}$ day of the original 180–day period would have been a dismissal of the charges with prejudice for violation of the 180–day rule. The charges might have been dismissed for some other reason, such as the failure of the charging documents to allege *scienter,* but they would not have been dismissed for a violation of the 180–day rule. The 180–day rule had obviously not yet been violated and could not possibly have been violated for another fifty-seven days. The trial could have gone forward, albeit on a possibly flawed indictment, on any of those fifty-seven days. *State v. Brown,* 341 Md. 609, 619, 672 A.2d 602 (1996), described the non-fatal impact in that regard of the *nol pros* in *Glenn:*

> The *Glenn* decision makes it clear, therefore, that a *nol pros* will have the "necessary effect" of an attempt to evade the requirements of § 591 and Rule 4–271 *only* when the alternative to the *nol pros* would have been a dismissal with prejudice for noncompliance with § 591 and Rule 4–271.

(Emphasis in original).

### The Legitimacy of a *Nol Pros* Does Not Depend On the Inadequacy of the Charging Document

■ It is *State v. Brown,* however, that is four-square dispositive of the case now before us. In all significant

regards, the case is indistinguishable from the one *sub judice*. In *State v. Brown*, the 180 th permissible trial day for the original set of charges was November 17, 1993. Trial was set for October 5, forty-three days before the expiration of the 180–day period. On October 5, the State *nol prossed* all charges.

In that case, as in this, the original pleading was not in any way flawed. When the defendant there was recharged slightly over three months later, the new charges replicated precisely the earlier charges that had been *nol prossed*. In the case now before us, the child abuse charge under the March 1, 1999 indictment replicated precisely the count of child abuse that had been *nol prossed* on February 23. As this Court noted in its unpublished opinion in *Brown v. State:*

> There is no suggestion that there was anything defective in the initial charge. The new indictment was indistinguishable from the initial charge.

In reversing, the Court of Appeals pointed out that the fact that the *nol pros* was not compelled by the inadequacy of the original pleading, as it had been in *State v. Glenn*, was no reason for us or for any court to look askance at it. A *nol pros* is sometimes used by a prosecutor not to repair an indictment but as a deliberate tactic to avoid an inconvenient or undesired trial date; it is a tactic, moreover, within the arsenal of the State's Attorney and not within the control of the trial judge.

### A *Nol Pros* Is a Legitimate Tactic To Obtain a Postponement

■ In *State v. Brown*, as in this case, the candid reason for entering the *nol pros* on the scheduled trial date was that the State was not yet ready to proceed to trial. On the scheduled trial date when the *nol pros* was entered, the State was not prepared to go forward with the trial and was in desperate need of postponement. The underwear of the child rape victim in that case "had been sent to the Maryland State Police Crime Laboratory for DNA testing" and "the results of

the DNA testing had not yet been received." 341 Md. at 612, 672 A.2d 602. "[T]he results of the testing were necessary both for compliance with the defendant's discovery motion and for the State's trial preparation." *Id.*

Although defense counsel acknowledged that there was a need for the results of the DNA testing and that, had the State sought a postponement of the trial date instead of filing a *nol pros,* "the postponement probably would have been granted," he nonetheless argued that

the State had not sought and obtained, in accordance with the statute and the rule, a postponement of the trial to a date beyond the 180–day deadline, and that, therefore, dismissal was the appropriate sanction.

341 Md. at 612–13, 672 A.2d 602. In our unreported opinion in *Brown v. State,* we agreed with defense counsel and afforded critical significance to the fact that the State had failed to request a postponement:

"We fully agree with the State that waiting for the DNA test results would have represented good cause for a postponement prior to the November 17, 1993, deadline and most assuredly would have been granted by any reasonable judge. *The State's problem, however, is that it failed to take this necessary and prescribed step* to avoid the foreclosing effect of the 180–day rule."

Quoted at 341 Md. at 613–14, 672 A.2d 602 (emphasis supplied).

In reversing the decision of this Court, the Court of Appeals pointed out that the tactical decision of which procedural device to employ to obtain the desired trial delay is one completely within the discretion of the State's Attorney:

The Court of Special Appeals stated in this case that the prosecuting attorney, instead of entering a *nol pros* on October 5, 1993, should have sought a postponement from the administrative judge. Nevertheless, *the decision whether to enter a nol pros or to seek a postponement* because of

the delay in the DNA testing *is for the prosecuting attorney and not for an appellate court.*

341 Md. at 620, 672 A.2d 602 (emphasis supplied).

### The *Nol Pros* as a Postponing Device In This Case

█ In the case now before us, the State's need for a trial delay, when it entered the *nol pros* on February 23, 1999, was not as dire as it had been in *State v. Brown.* It was nonetheless a substantial need. The State was then considering and had just about concluded that it would not be in the best interest of the nine-year-old boy who was the child abuse victim to testify. The State's only way to salvage at least the child abuse charge was to have a social worker testify as to hearsay statements made to her by the victim. Art. 27, § 775(c)(3), however, required the State to give to the defendant twenty days notice of its intention to introduce the victim's statement through the social worker and to furnish the defendant with the content of such statement. That notice had been given to the defendant only as of February 12.

Had the defendant objected to the testimony of the social worker because of untimely notice, the State might have been compromised in attempting to go forward with the trial on the scheduled trial date of February 23. The trial judge might not have ruled the hearsay inadmissible because of a notice violation but the State's case would have been at risk. The State had good cause for requesting a postponement on February 23, had it chosen to request a postponement rather than entering a *nol pros.* It appears likely that a postponement would have been granted. In his subsequent ruling denying the appellant's motion to have the charges dismissed, Judge Davis recognized this. Applying the teaching of *State v. Brown,* he did not find it significant that the State had utilized a *nol pros* rather than a request for a postponement:

It's true the State's Attorney could have sought [a delay] by way of postponement as opposed to nol pros, but as the Court [of Appeals] stated in the case of *State v. Brown,* that

decision is one for the State's Attorney and not for the Court.

## Actual Effect Versus Necessary Effect

The ultimate result, however, was that the State in the *Brown* case failed to bring the defendant to trial within the original 180–day period. The defendant moved, therefore, to have all charges dismissed because of a violation of the 180–day rule. The trial court denied the motion but this Court, in an unreported opinion, agreed with the defendant that he had, indeed, suffered a violation of his right to be tried within the original and untolled 180–day period. We held that the *nol pros* had had the **effect** of circumventing the rule. We applied the exception and reversed the conviction:

> If the purpose *or effect* of the *nol pros* and subsequent recharging is to avoid the 180–day time limit, then the clock is deemed to have started running with the filing of the initial charge and is deemed to continue to run unaffected by the procedural maneuvering.
>
> . . .
>
> There is no suggestion in this case that the State was doing anything in an underhanded fashion. It simply made a mistake in the method it chose to accomplish its purpose. . . . Although the State was not guilty of any ulterior motive or nefarious purpose in entering the *nol pros, the nol pros nonetheless had the effect of circumventing the 180– day rule.*

(Emphasis supplied).

In reversing this Court, the Court of Appeals admonished us not indulgently to treat every **effect** as a **necessary effect**:

> *The Court of Special Appeals in the present case seems to have taken the position that whenever there is a nol pros and refiling of the same charges, and when the trial under the second charging document commences more than 180 days after the arraignment or first appearance of counsel under the first charging document, the "effect" of filing a nol pros instead of seeking a postponement is to circumvent*

*the 180–day rule.* In reality, this position is the same as holding that the running of the 180–day time period is neither tolled nor ended by the *nol pros,* and that the same period continues to run when the charges are refiled. It is, in substance, the position which had been taken by the Court of Special Appeals in the *Glenn* and *Phillips* cases which this Court reversed.

341 Md. at 620, 672 A.2d 602 (emphasis supplied).

It went on to hold that in the forty-three days yet remaining in the original 180–day period, the State 1) could have sought "to expedite the DNA testing" or 2) that failing, could have requested a subsequent "good cause postponement of the trial to a date beyond the 180–day period."

It is obvious that *the nol pros in the case at bar did not have the necessary effect of an attempt to circumvent the requirements* of § 591 and Rule 4–271. If the case had not been *nol prossed* on October 5, 1993, there would have been 43 days before the expiration of the 180–day period. In this respect, the case is very much like the *Glenn* case. During this 43–day period, *the State's Attorney's office may have been able to expedite the DNA testing* and obtain the results so that trial of the case could have begun before the deadline. Alternatively, *the State's Attorney's office may have obtained* from the administrative judge, in accordance with § 591 and Rule 4–271, *a good cause postponement of the trial to a date beyond the 180–day period.* There was clearly a basis for such postponement.

*Id.* (emphasis supplied).

 In fact, the State did neither of those things, but that no longer mattered. **The possibility that the State might have done so** at the time the *nol pros* was entered negated the conclusion that the *nol pros, ipso facto,* had had the **necessary effect** of circumventing the 180–day rule. Absent such a **necessary effect,** a new and independent 180–day time period began to run with respect to the new charges. The original 180–day time period was no longer pertinent. What the State actually did or failed to do became, therefore,

immaterial, provided only that it brought the case to trial within 180 days of "the arraignment or first appearance of defense counsel under the second prosecution." *Curley,* 299 Md. at 461, 474 A.2d 502.

 Defendants in cases such as this are understandably susceptible to the logical fallacy of "*Post hoc; ergo, propter hoc.*" They want to reckon backward from what, to them at least, is an undesirable **effect**, pointing the finger of blame at an earlier event (the *nol pros* ) that unquestionably was at least a contributing **cause** to that **effect**. When they do this, however, their conclusions are skewed because their temporal vantage point is wrong. It is the teaching of *Curley, Glenn,* and *Brown* that we do not assess the situation by looking backward from the arguably adverse **effect**, searching for a cause. A mere **cause and effect** relationship is not enough. We look, rather, from a potential **cause** forward, asking not whether the feared **effect** is a predictable possibility but whether it is, **as of that moment**, already a foregone conclusion—a **necessary effect**, an unavoidable consequence, a virtual inevitability. We assess the situation as of the day the *nol pros* is entered.

### Ross v. State

Our decision in *Ross v. State,* 117 Md.App. 357, 700 A.2d 282 (1997), is in no way inconsistent with the holdings of *Curley, Glenn,* and *Brown.*[1] As *Curley* established, the norm is that the 180–day time period will begin to run anew with the filing of new charges. There is a two-pronged exception to that normal rule. *Curley, Glenn,* and *Brown* all dealt with that prong of the exception where the **necessary effect** of a *nol pros* is to circumvent the 180–day rule. *Ross v. State,* by contrast, dealt with the other prong of the exception, to wit, where the **purpose** of the *nol pros* is to circumvent the rule.

---

**1.** Between the respective predispositions, however, there is a discernible psychic tension. The tension, to be sure, is more between the lines than between the holdings.

In *Ross,* the critical trial date was scheduled well within the original 180–day period. On that trial date, the State went to the administrative judge and requested a continuance because "the drugs seized ... had not yet been analyzed." The administrative judge denied the requested continuance. In doing so, he offered the further opinion:

> I don't think this case can be put back in. Our docket is too crowded. It cannot be put back in before *Hicks* runs.

When the administrative judge denied the State's request for a postponement, the State immediately responded, "With that ruling, the State will enter the matter as *nolle prosequi.*" A new indictment was subsequently filed. The defendant was then tried within 180 days of his arraignment or the first appearance of counsel under the new indictment but not within 180 days as measured from the first indictment. The defendant there had, prior to his ultimate trial, moved to have the charges dismissed for a violation of his alleged right to be tried within the original 180–day period. The hearing judge denied the defendant's motion. This Court reversed that ruling.

Although the hearing judge had dismissed the earlier observations of the administrative judge with respect to the impossibility of timely scheduling the case for trial as a *"sua sponte* prediction," this Court disagreed with that characterization. We stated that "in light of the administrative judge's supervision of the docket, we are unable to ignore the statement that the case could not be heard before the expiration of the 180–day time period." 117 Md.App. at 370, 700 A.2d 282. We distinguished the situation before us in *Ross* from that which had been before the Court of Appeals in *State v. Brown:*

> In *Brown,* however, there was no ruling from the administrative judge. Moreover, both parties had agreed that, if requested, a postponement for good cause would have been granted, and that there was a possibility that the case could have been brought to trial within the remaining forty-three days of the 180–day time period.... In the present case, however, a postponement was requested and denied and, as

found by the administrative judge, the case could not be set in before the tolling of the 180–day limit.

117 Md.App. at 370, 700 A.2d 282.

Our ultimate holding, however, was that in entering the *nol pros*, the State had the **purpose**[2] of circumventing the 180–day rule:

> [I]mmediately following the judge's ruling, the State entered a *nol pros* in the case. *We can discern no clearer attempt to circumvent the time period* dictated by Art. 27, § 591 and Rule 4–271.
>
> *We hold that the State entered the nol pros to circumvent the 180–day limit.* As a result, the 180–day time period in which appellant had to be brought to trial must be calculated from the date defense counsel entered his appearance under the first indictment.

*Id.* (Emphasis supplied).

## The State Still Had Other Options

Unlike the situation before us in *Ross v. State,* there was no denial of a requested postponement in this case by the administrative judge or by any other judge. Indeed, the indications are that the State had good cause for requesting a postponement and the trial judge would have looked favorably upon such a request, had one been made. Even though the time period remaining between the entry of the *nol pros* and the termination of the initial 180–day period was less in this case

---

**2.** The trial judge, who denied Ross's motion to dismiss, had made no finding and no ruling with respect to the State's **purpose** in entering the *nol pros.* It appears that this Court indulged in *de novo* appellate fact finding in making a finding in that regard. A "clear purpose to circumvent" an administrative judge's denial of a postponement (which purpose spoke for itself) was not *ipso facto* a "clear purpose to circumvent" a trial deadline which was still 88 days in the future. This is what we had in mind when we spoke, *supra* at n. 1, of the psychic tension between *Ross v. State,* on the one hand, and the trilogy of Court of Appeals opinions, on the other.

than in *State v. Ross*, there was in this case no indication by an administrative judge or anyone else that the dockets were so crowded that there was no possibility that the case could have been reset for a timely trial within the original 180–day period. *Ross v. State* was dealing with the very crowded and highly automated court docket in Prince George's County. There was no indication in this case that Wicomico County, by contrast, could not have found a way, if necessary, to fit this case into its trial schedule.

On the day the *nol pros* was entered, February 23, the dismissal of all charges against the appellant for a violation of the 180–day rule was not the **only** alternative to the *nol pros.* On that day or on any of the nineteen days that followed, the State could still have proceeded to trial, using the nine-year-old victim as its chief prosecution witness, notwithstanding the fact that it might not have been in the child's best interest. Alternatively, the State could still have proceeded to trial on that day or on any of the nine days that followed, relying on the social worker as its chief prosecution witness and hoping that the trial judge would apply some sanction for the notice violation less severe than the exclusion of her testimony. Minor discovery violations do not routinely incur the heavy sanction of evidentiary exclusion. Yet again alternatively, the State could have waited until the tenth day after the *nol pros* (the twentieth day after giving notice of the witness) and on that day or on any of the nine days that followed, still proceeded with the trial with the social worker as its chief prosecution witness untainted by any notice violation. All of those alternatives failing, the State, at any time prior to March 14, could still have requested the administrative judge to grant a postponement to a time beyond the original 180–day barrier. The State was not without options.

Aware of all of these alternatives to a dismissal, Judge Davis finally and properly ruled:

> *The Court does not believe* under the circumstances of this case *that the nol pros* here *had the necessary effect of*

*an attempt to circumvent the requirements of the 180–day Rule,* and I am going to deny your Motion to Dismiss. (Emphasis supplied).

### The Holding

Under the clear teaching of *Curley, Glenn,* and *Brown,* we hold that the entry by the State of the *nol pros* on February 23, 1999 did not have the **necessary effect** of circumventing the 180–day rule. Under those circumstances, a new 180–day time period began with the appellant's arraignment before the circuit court on March 15, 1999, following the filing of the indictment against him, charging child abuse, on March 1, 1999. Measured from March 15, 1999, the appellant was tried within 180 days. There was, therefore, no violation of Art. 27, § 591 or of Md. Rule 4–271.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.*