*Sheldon White v. State*, No. 1232, Sept. Term 2019, Opinion by Graeff, J.

**CRIMINAL LAW — SPEEDY TRIAL – 180-DAY REQUIREMENT**

Md. Code Ann., Criminal Procedure Article ("CP") § 6-103 (2018 Repl. Vol.), implemented by Md. Rule 4-271(a), provides that a criminal defendant in the circuit court must be brought to trial within 180 days after the earlier of the appearance of counsel or the first appearance of the defendant in the circuit court. Pursuant to this 180-day deadline, unless the defendant consents to an extension, the charges must be dismissed if the State fails to establish good cause for trying the defendant after the 180-day deadline.

When the State enters a *nol pros* in a circuit court criminal case and later refiles the same charges, however, the 180-day period for trial prescribed by CP § 6-103 and Rule 4-271(a) ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution. An exception to this general rule applies if the prosecution's purpose in filing the *nol pros*, or the necessary effect of the *nol pros*, is to circumvent the requirements of the statute and rule. Under those circumstances, the time period running with the initial prosecution remains in effect.

Here, the State did not *nol pros* the charges after a request for a continuance was denied. Because neither the purpose of the *nol pros* nor the necessary effect was to circumvent Md. Rule 4-271(a) or CP § 6-103, the 180-day deadline ran from the filing of the second indictment. The circuit court properly denied appellant's motion to dismiss based on the requirements of the statute and the rule.

**CRIMINAL LAW — POSSESSION WITH INTENT TO DISTRIBUTE — MIXTURE OF HEROIN AND FENTANYL — MD. CODE ANN., CRIM. LAW ARTICLE § 5-608.1 — SENTENCING ENHANCEMENT — MERGER**

Md. Code Ann., Crim. Law Article ("CR") § 5-602 provides that a person may not distribute or dispense a controlled dangerous substance or possess it in sufficient quantity to reasonably indicate an intent to distribute. CR § 5-608.1(a) provides that a person may not knowingly violate CR § 5-602 with "a mixture that contains heroin and a detectable amount of fentanyl." "A person who violates this section is guilty of a felony and, in addition to any other penalty imposed for a violation of § 5-602 of this subtitle, on conviction is subject to imprisonment not exceeding 10 years." CR § 5-608.1(b). A "sentence imposed under this section shall be consecutive to and not concurrent with any other sentence imposed under any other provision of law." CR § 5-608.1(c).

The plain language of the statute makes clear that CR § 5-608.1 establishes a crime separate from that set forth in CR § 5-602, and a defendant may be separately charged, convicted, and sentenced pursuant to CR § 5-608.1. Accordingly, a trial court has jurisdiction to convict and sentence a defendant on a charge pursuant to CR § 5-608.1. Moreover, a court

may impose separate sentences for separate convictions of CR §§ 5-602 and 5-608.1; merger is not required.

**CRIMINAL LAW — MOTION TO WITHDRAW PLEA AGREEMENT — RULE 4-242 — NOT GUILTY ON AGREED STATEMENT OF FACT**

Md. Rule 4-242(h) provides that, "[a]t any time before sentencing, the court may permit a defendant to withdraw a plea of guilty, a conditional plea of guilty, or a plea of nolo contendere when the withdrawal serves the interest of justice." Rule 4-242(h) does not authorize withdrawal of a plea of not guilty pursuant to an agreed statement of facts. Where there is no suggestion that the plea was anything other than a plea of not guilty pursuant to an agreed statement of facts, the defendant cannot move to withdraw the plea and void the conviction pursuant to Rule 4-242(h).

Circuit Court for Frederick County
Case No. C-10-CR-19-000120

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1232

September Term, 2019

_____

SHELDON DUKE WHITE

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Graeff,
Harrell, Glenn T., Jr.
        (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Graeff, J.
_____

Filed: May 26, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On September 18, 2018, a grand jury in the Circuit Court for Frederick County returned a 25-count indictment against Sheldon Duke White, appellant, for various CDS and firearm offenses. In January 2019, after forensic testing revealed the presence of fentanyl in the seized contraband, the grand jury returned a second indictment against appellant, charging identical counts for the same events, plus an additional four counts related to the fentanyl. The State then entered a *nolle prosequi* ("*nol pros*") of the charges in the first indictment.[1]

On June 4, 2019, appellant pleaded not guilty to the charges, pursuant to an agreed statement of facts, and the court convicted him of possession with intent to distribute heroin (count 12), possession with intent to distribute heroin with a detectable amount of fentanyl (count 16), and possession of a firearm during a drug trafficking crime (count 25). The court sentenced appellant to 20 years' imprisonment on count 25, the first five years without parole, 20 years' imprisonment on count 12, to be served consecutively, but all suspended, and 10 years' imprisonment on count 16, to be served consecutively, but all suspended.

On appeal, appellant presents several questions for this Court's review, which we have rephrased slightly, as follows:

1. Did the circuit court err by denying appellant's motion to dismiss on speedy trial grounds?

2. Did the circuit court lack jurisdiction to convict appellant of possession with intent to distribute heroin with a detectable amount of

---

[1] A *nolle prosequi*, or *nol pros*, is "an action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment." *State v. Huntley*, 411 Md. 288, 291 n.4 (2009).

fentanyl pursuant to Md. Code Ann., Criminal Law Article ("CR") § 5-608.1 (2018 Supp.), because it is a sentencing enhancement, not a stand-alone crime?

3.      Did the circuit court err by failing to merge appellant's two possession convictions, which both related to possession of a single compound mixture containing heroin and fentanyl?

4.      Did the circuit court abuse its discretion in denying appellant's motion to exclude his post-arrest statement?

5.      Did the circuit court err in denying appellant's motion to withdraw his hybrid plea because the proffered evidence contained a dispute of material fact?

6.      Was there sufficient evidence to sustain appellant's CDS convictions?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 2019, appellant pleaded not guilty to three drug trafficking and firearms charges based on an agreed statement of facts, preserving his right to appeal.[2] The prosecutor began by explaining the posture of the case:

> [PROSECUTOR]: [We] will be proceeding in the manner of a not guilty agreed statement of facts, but it's my understanding that there's no argument to be made with respect to the sufficiency of the evidence, so this is not one where the Defense will be arguing that the facts don't support the charges.
>
> It's simply, we have an agreed statement of facts. The Defense is going, wants to proceed this way, is my understanding, to preserve certain appellate rights; namely with respect to pretrial motions that have adverse rulings to them for motion to dismiss, motion to suppress, [and] motion regarding admissibility.

---

[2] The Court of Appeals has characterized a plea of not guilty pursuant to an agreed statement of facts as a "hybrid plea," where the accused pleads not guilty, foregoes a trial, and proceeds on an agreed statement of facts, but "the accused maintains the ability to argue legal issues, as well as sufficiency [of the evidence]." *Bishop v. State*, 417 Md. 1, 16, 22 (2010).

Appellant did not object to these statements, and defense counsel subsequently affirmed that the defense would not contest the statement of facts.

The prosecutor stated that, if the court found appellant guilty of the three charges, there was a joint recommendation regarding sentencing, which included 20 years on count 25, possession of a firearm with a nexus to drug trafficking, and five years of probation. The prosecutor continued:

> Count 12, possession with the intent to distribute heroin, he would receive a 20-year sentence. That would be all suspended consecutive to Count 25.
>
> Count 16, he would receive a 10-year sentence. That would be, and is required to be, consecutive under the statute. That would be consecutive to Counts 12 and 25, all suspended.
>
> So for a total of 50 years, suspend all but 20 years to serve.
>
> The defendant would be placed on five years of supervised probation. It's my understanding, this being a joint recommendation, there's no disagreement with respect to these terms.

After defense counsel and the court questioned appellant to make sure he understood the rights he was waiving by proceeding with an agreed statement of facts, the State set forth the agreed statement of facts as follows:

> Detective Scott Grigsby, with Frederick Police Department, would testify. He would have been offered and accepted by the Court as an expert in drug narcotics investigations, and the common practices of those engaged in drug distribution. The State submits, as State's Exhibit 1, his curriculum vitae, stating his training and experience.
>
> The testimony would have been that he, in May of 2018, he, a detective with the Frederick Police Department's Drug Enforcement Unit, began an investigation into an individual known as, quote, Major, unquote, suspected of supplying cocaine, heroin, and fentanyl in the Frederick area.

Detective Grigsby had received information from confidential sources. He was able to identify the suspect as [appellant], who he would identify as the individual before you in court today.

Over the course of the investigation, the detective conducted surveillance of the defendant and his associates in the Frederick area. A confidential informant was utilized to conduct a controlled purchase of heroin and fentanyl from [appellant] on July 24th, 2018.

After conducting surveillance and identifying a hotel room believed to be utilized by [appellant] for the storage and distribution of narcotics, Detective Grigsby applied for, and was granted a search warrant for 7310 Executive Way. This is Frederick, Maryland, Room 303 of the Mainstay Suites Hotel. He was able to secure that on August 20th, 2018.

\* \* \*

On August 21st, 2018, at approximately 6:45 a.m., members of the Frederick Police Department and the SWAT Team executed a search and seizure warrant located at 7310 Executive Way, Room 303. Inside the hotel room, [appellant] and a female, Sarah Nelson, were located and arrested.

Detective Grigsby verbally read [appellant] his Miranda rights, which he stated, yes, that he understood then [sic] in the presence with Detective Ray Bednar.

Detective Grigsby advised [appellant] that he had a search warrant for the room. Detective Grigsby [asked appellant] if there was anything illegal in the room.

[Appellant] stated, there is a lot of drugs in the nightstand, they are all mine, and there are things under the bed, there are things under the bed.

Detective Grigsby stated, what is under the bed?

[Appellant] replied, there is a handgun under the bed. [Appellant] replied that everything in the room was his.

The following evidence was recovered with respect to this, these particular counts. There were additional items recovered, but with respect to these counts, in a plastic bag in the nightstand drawer in the bedroom, a clear bag containing 17 gelcaps of suspected heroin, which is approximately 6.9 grams at the time of processing; and a clear bag containing 25 gelcaps that

4

was approximately 9.6 grams. These were suspected to be heroin and/or heroin and fentanyl.

Detective Grigsby would have testified that the street, that gelcaps of heroin sell for approximately 20 to $40 in Frederick.

Detective Grigsby also would have testified that the evidence in the bag in the nightstand is an indication of possession with the intent to distribute, because of the large amount, the packaging materials and the -- Court's indulgence -- the amount of the caps, and the packaging material, and the location.

Directly next to the nightstand was a pair of blue jean shorts on the floor, and inside those shorts was [appellant's] Pennsylvania driver's license. Inside [appellant's] pants pocket was $1365 in U.S. currency, along with $10 that was sitting on the nightstand, so a total of $1375 was seized.

Directly next to the pants with [appellant's] driver's license and the large amount of CDS located on the nightstand, there was a black Pietro Beretta [9mm] handgun located under the mattress of the bed. The handgun was loaded and had 13 live rounds in the magazine. There was an extra magazine with 13 live rounds along with 50 loose live 9mm rounds in a black bag next to the handgun.

The State then explained the photographs the State would have introduced, including: (1) photographs showing that this was a small hotel suite with three rooms; (2) photographs depicting where the mattress was lifted and the gun was located; and (3) a photograph showing the nightstand with the drawer open with a plastic bag in the bottom of the drawer.

The State asked the court to take judicial notice of the testimony of the three officers at the suppression hearing, stating that "they would testify that the defendant knowingly and voluntarily waived his right to remain silent and right to counsel, and no threats, promises, coercion, or inducements were used to elicit his statements."

The prosecutor continued:

5

Additionally, Detective Grigsby would have testified as an expert witness, that often, those involved in the drug trade maintain firearms to protect their stash of CDS and large amounts of money from robbery or theft, and for protection when dealing with other individuals involved in the drug trade.

The gun's location, in this case, within a few feet of the large amount of CDS in the nightstand, as well as the presence of . . . $1375 in the same area as the gun and the drugs, is consistent with the firearm being maintained with a nexus to drug trafficking. And the defendant's statements indicating his knowledge of and possession of the firearm.

Additionally, [appellant] did not have any valid employment at the time, indicating that the money was the result of drug distribution.

The State would have called crime scene technician, Emma Sentz. She would have testified that she test-fired the Pietro Berreta handgun. The State would have introduced her report and her testimony into evidence, State's Exhibit 5, we would move into evidence, where she certifies that the firearm was operable and capable of being fired.

Next, the State would have called Laurel Hardy (phonetic sp.), who's a forensic chemist with the Maryland State Police Forensic Sciences Division. The State would have offered, and the Court would have accepted, her as an expert witness in the identification of controlled dangerous substances. The State submits her curriculum vitae as State's Exhibit 6.

\* \* \*

This is the MSP chain of custody form, and also the laboratory report showing Ms. Laurel's results, that there are 17 capsules each containing a tan, powdery substance. Of that portion, there was a total gross weight of 5.931 grams There was a net weight of specimens analyzed of .678 grams. They did, in fact, test positive for heroin and fentanyl, indicating the presence of fentanyl and heroin together as a mixture.

Item 6, 25 capsules each containing a tan, powdery substance, total gross weight of 8.7 grams, net weight of specimens analyzed, .652 grams. They, in fact, did test positive for heroin and fentanyl. Both were present in the mixture.

6

The prosecutor stated that Detective Grigsby would have testified that, when he transported appellant to the Frederick County Adult Detention Center, he asked appellant what appellant would have done if he had the handgun on his person when the police executed the search warrant. Appellant stated: "[N]o disrespect to you, but I would have shot it out with you all." The prosecutor concluded the agreed facts by stating that "[t]he witnesses would have identified the [appellant] as the individual located in the hotel room and possessing the firearms, and in possession with intent to distribute the heroin mixed with fentanyl."

Based on these facts, the court convicted appellant of possession with intent to distribute heroin (count 12), possession with intent to distribute heroin with a detectable amount of fentanyl (count 16), and possession of a firearm with a nexus to drug trafficking (count 25). All other charges, including those related to the July 24, 2018, controlled purchase, subsequently were *nol prossed*.

This appeal followed.

## DISCUSSION

## I.

### Speedy Trial

Appellant contends that the circuit court erred in denying his motion to dismiss the charges based on a denial of his speedy trial rights. He asserts that the State "deprived [him] of a timely trial within the 180-day period by dismissing the first indictment when forensic testing revealed the presence of fentanyl in the seized heroin."

The State disagrees.  It asserts that the court properly denied appellant's motion to dismiss.

**A.**

**Proceedings Below**

As indicated, on September 17, 2018, a grand jury returned a 25-count indictment charging appellant with various narcotics trafficking and firearms offenses (Case No. C-10-CR-18-000890).  Counts 1 through 7 related to the controlled purchase on July 24, 2018, and counts 8 through 25 related to the search and seizure at the hotel on August 21, 2018.  These latter counts did not contain any charges related to possession or distribution of fentanyl.  Trial was scheduled for February 5 and 6, 2019.

In early January 2019, forensic testing revealed the presence of fentanyl in the gel capsules seized from the hotel room.  On January 22, 2019, the State filed a second indictment against appellant (Case No. C-10-CR-19-000120), which charged, in addition to the original 25 counts, four additional counts; (1) possession with intent to distribute fentanyl (count 14); (2) possession of fentanyl (count 15); (3) possession with intent to distribute heroin and a detectable amount of fentanyl (count 16); and (4) conspiracy to distribute fentanyl (count 23).  On January 30, 2019, the State *nol prossed* the first indictment.

On February 8, 2019, appellant filed a motion to dismiss the January 22, 2019, indictment, alleging a violation of his right to a speedy trial.  He argued that the State: (1) violated his constitutional right to a speedy trial pursuant to *Barker v. Wingo*, 407 U.S. 514

(1972); and (2) "the 180-day rule." He asserted that, if the State did not try him before March 27, 2019, then the case should be dismissed.

The State filed an opposition to the motion. It argued that there was no violation of appellant's speedy trial rights because it filed new charges, and it did not act in bad faith to gain an unfair advantage over appellant.

On April 9, 2019, the circuit court denied appellant's motion to dismiss. It stated that, with respect to the argument that "it's a violation of speedy trial because the State's nol prossing the original charges and recharging was done to circumvent [the 180-day rule"],

> the case law is clear. There has to be something in the record that . . . you're approaching the trial date, there's an effort made to postpone the case, the administrative judge denies it, and the State nol prosses and recharges. That is clearly not the situation here. So on that, I'm denying the, the denial of the speedy trial on that ground.

With respect to the constitutional right to a speedy trial, the court stated that it would take that argument "under advisement."

**B.**

**Speedy Trial**

There are two separate bodies of law addressing delay in bringing a defendant to trial on criminal charges. The first is the constitutional right of an accused in a criminal prosecution to a "speedy trial." U.S. Const. amend. VI; Md. Const. Decl. Rts. art. 21. "This guarantee serves 'to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.'" *Singh*

9

*v. State*, 247 Md. App. 322, 347 (2020) (quoting *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986)).

The second body of law is established by statute and rule. It requires the State, unless good cause is found or a defendant consents to a later date, to bring a criminal defendant to trial no later than 180 days after the earlier of the first appearance of the defendant in circuit court or the appearance by counsel. Md. Code Ann., Criminal Procedure Article ("CP") § 6-103(a) (2018 Repl. Vol.); Md. Rule 4-271(a).

CP § 6-103 provides:

(a)(1) The date for trial of a criminal matter in the circuit court shall be set within 30 days after the earlier of:

(i) the appearance of counsel; or

(ii) the first appearance of the defendant before the circuit court, as provided in the Maryland Rules.

(2) The trial date may not be later than 180 days after the earlier of those events.

(b)(1) For good cause shown, the county administrative judge or a designee of the judge may grant a change of the trial date in a circuit court:

(i) on motion of a party; or

(ii) on the initiative of the circuit court.

(2) If a circuit court trial date is changed under paragraph (1) of this subsection, any subsequent changes of the trial date may only be made by the county administrative judge or that judge's designee for good cause shown.

(c) The Court of Appeals may adopt additional rules to carry out this section.

10

The Court of Appeals adopted Md. Rule 4-271(a) to implement this statute. The Rule provides, in pertinent part, as follows:

> (a) Trial Date in Circuit Court. (1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4-213, and shall be not later than 180 days after the earlier of those events. . . . On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date. If a circuit court trial date is changed, any subsequent changes of the trial date may be made only by the county administrative judge or that judge's designee for good cause shown.

The purpose of this statute and rule, often referred to as the "*Hicks* rule"[3] or the "180-day deadline" is "to afford reasonably prompt trials, and eliminate excessive scheduling delays and unjustifiable postponements." *See State v. Price*, 385 Md. 261, 278 (2005). The *Hicks* rule was "not intended to be [a] codification[] of the constitutional speedy trial right." *State v. Huntley*, 411 Md. 288, 294 (2009) (quoting *Curley v. State*, 299 Md. 449, 460 (1984)). Rather, it serves to protect "society's interest in the efficient administration of justice," and the benefit conferred upon a defendant is "purely incidental." *Price*, 385 Md. at 278.

Here, appellant's speedy trial claim relies on the time requirements imposed by statute and rule. Although he notes on appeal that the circuit court failed to issue a formal ruling on his argument that his constitutional right to a speedy trial had been violated, he did not argue in his brief that he was denied the right to a speedy trial on constitutional grounds. At oral argument, counsel confirmed that appellant was not making a claim based

---

[3] *See State v. Hicks*, 285 Md. 310, 318, on motion for reconsideration, 285 Md. 334 (1979).

on the constitutional right to a speedy trial. Accordingly, we confine our analysis to the 180-day deadline imposed by the statute and rule.

Pursuant to the 180-day deadline, unless the defendant consents to an extension, the charges must be dismissed if the State fails to establish good cause for trying the defendant after this 180-day deadline, also known as the "*Hicks* date." *See State v. Frazier*, 298 Md. 422, 429 (1984). A more nuanced analysis applies, however, in the situation where, as here, the State *nol prosses* the initial indictment and files new charges.

When the State enters a *nol pros* in a circuit court criminal case and later refiles the same charges, the 180-day period for trial prescribed by CP § 6-103 and Rule 4-271(a) "ordinarily begins to run with the arraignment or first appearance of defense counsel under the second prosecution." *Curley*, 299 Md. at 462. *Accord Huntley*, 411 Md. at 293. This is because a *nol pros* "is not an occasion for skepticism or suspicion," but rather, "it is a legitimate and accepted way of doing prosecutorial business." *Baker v. State*, 130 Md. App. 281, 288 (2000).

There is, however, an exception to this general rule if "the prosecution's purpose in filing the nol pros, or the necessary effect of the nol pros, [is] to circumvent the requirements" of the statute and rule. *Price*, 385 Md. at 269 (quoting *State v. Glenn*, 299 Md. 464, 467 (1984)). Under those circumstances, "the time period running with the initial prosecution" remains in effect. *Ross v. State*, 117 Md. App. 357, 366–67 (1997) (quoting *Curley*, 299 Md. at 461), *cert. denied*, 348 Md. 334 (1998). Otherwise, the State could avoid the *Hicks* rule by *nol prossing* a case and refiling the charges, causing the time

12

requirements to start over, without a showing of good cause and a postponement granted by an administrative judge. *Curley*, 299 Md. at 466.

Thus, in determining the 180-day deadline in the situation where charges are *nol prossed* and refiled, there are two prongs of analysis. First, a court considers whether the necessary effect of a *nol pros* is to circumvent the requirements of the statute and rule. *Price*, 385 Md. at 269. The second prong of the analysis involves the purpose of the *nol pros*, i.e., whether the prosecution's purpose in filing the *nol pros* was to circumvent the requirements of CP § 6-103 and Rule 4-271. *Id.*

The first case addressing the exception to the general rule, *Curley v. State*, 299 Md. 449 (1984), involved the necessary effect prong. In that case, the court granted a defense request for postponement, but a new trial date was never rescheduled. *Id.* at 452–53. On the *Hicks* date, the State *nol prossed* the charges. *Id.* at 453. The State advised the defense of the *nol pros* by letter, stating that the disposition was based on the inadmissibility of certain evidence and a request by the victim's family. *Id.* Several months later, the State filed a second indictment charging the same offenses. The circuit court denied the defendant's motion to dismiss on speedy trial grounds. *Id.* at 454.

The Court of Appeals reversed. *Id.* at 462–63. It explained that the State's *nol pros* circumvented the *Hicks* rule because it was entered on the last day of the 180-day deadline, and the case could not be tried that day because a trial date had not been assigned and the defendant was not in court. *Id.* Therefore, the State had "already lost the case" when the *nol pros* was filed. *Id.* Accordingly, "the necessary effect of the nol pros was an attempt

13

to evade the dismissal resulting from the failure to try the case within 180 days," and the court erred in denying his motion to dismiss. *Id.*

The Court of Appeals subsequently has explained that

> a nol pros has the "necessary effect" of an attempt to circumvent the requirements of [CP § 6-103(a)(2)] and Rule 4-271 when the alternative to the nol pros would be a dismissal of the case for failure to commence trial within 180 days. When compliance with the requirements of [CP § 6-103(a)(2)] and Rule 4-271 is, as a practical matter, no longer feasible, then a nol pros and later refiling of the same charges has the "necessary effect" of an attempt to circumvent the requirements of the statute and the rule.

*State v. Brown*, 341 Md. 609, 618 (1996). *Accord Ross*, 117 Md. App. at 369 ("[A] nol pros will have the 'necessary effect' of an attempt to evade the requirements of [CP § 6-103(a)(2)] and Rule 4–271 *only* when the alternative to the nol pros would have been dismissal with prejudice for noncompliance" with the 180-day deadline.).

In *Brown*, 341 Md. at 612, the State *nol prossed* the charges on the trial date, stating that the DNA testing results had not yet been received. At that time, there were 43 days before the expiration of the 180-day deadline. *Id.* Three months later, the test results were received, and the State issued new charges. *Id.* The defendant filed a motion to dismiss, arguing that, although a postponement "probably would have been granted" if requested, the prosecutor failed to request a postponement beyond the 180-day deadline, and therefore, dismissal was appropriate. *Id.* The Court of Appeals disagreed, stating:

> It is obvious that the nol pros in the case at bar did not have the necessary effect of an attempt to circumvent the requirements of [CP § 6-103(a)(2)] and Rule 4-271. If the case had not been nol prossed on October 5, 1993, there would have been 43 days before the expiration of the 180-day period. . . . During this 43-day period, the State's Attorney's office may have been able to expedite the DNA testing and obtain the results so that trial of the case could have begun before the deadline. Alternatively, the State's Attorney's

14

office may have obtained from the administrative judge, in accordance with [CP § 6-103(a)(2)] and Rule 4-271, a good cause postponement of the trial to a date beyond the 180-day period. There was clearly a basis for such postponement.

*Id.* at 620.

The Court rejected the argument that the State should have sought a postponement rather than entering a *nol pros*. *Id.* at 620–21. It explained:

[T]he decision whether to enter a nol pros or to seek a postponement because of the delay in the DNA testing is for the prosecuting attorney and not for an appellate court. *Hook v. State*, 315 Md. 25, 35, 553 A.2d 233, 238 (1989) ("'The entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control,'" quoting *Ward v. State*, 290 Md. 76, 83, 427 A.2d 1008, 1012 (1981)). The State's Attorney's office may have decided that if the DNA test results were favorable to the defendant, the charges would not be refiled, and thus the nol pros on October 5, 1993, would have ended the matter. Whatever the reason, however, the decision to enter a nol pros or to seek a postponement was within the prosecuting attorney's discretion.

*Id.* This Court subsequently explained that, as long as a *nol pros* does not have the purpose or necessary effect to circumvent the requirements of the rule, it is a "tactic . . . within the arsenal of the State's Attorney." *Baker*, 130 Md. App. at 294.

With respect to whether the *nol pros* implicates the second prong of the analysis, i.e., whether the prosecutor's purpose in filing the *nol pros* was to circumvent the requirements of the statute and the rule, several cases are instructive. In *Baker*, 130 Md. App. at 285, the State *nol prossed* the charges on the date of trial, 19 days before the *Hicks* date. *Id.* Six days later, the State filed a new indictment, and Baker filed a motion to dismiss. *Id.* In addressing whether the *nol pros* had the purpose of circumventing the 180-day requirement, this Court noted that the prosecutor stated at the hearing on the motion to

15

dismiss that "*the 180 day Rule had never entered into [his] mind*." *Id.* at 289. We stated that, in denying the motion to dismiss, the circuit court "implicitly accepted as a fact that the prosecutor had no deliberate purpose to circumvent the 180-day rule." *Id.* We held that "there [was] no question that the *nol pros* did not have the **purpose** of circumventing the 180-day requirement." *Id.* That case, similar to the present case, involved a situation where there had been no denial of a requested postponement by a judge prior to the entry of the *nol pros*. *See id.* at 301.

In *Alther v. State*, 157 Md. App. 316, 319, *cert. denied*, 383 Md. 213 (2004), the State initially charged Alther with first-degree rape, but it then dropped that charge. Approximately one week before trial, after two prior postponements, the State filed a new charging document adding a first-degree rape charge. *Id.* at 319–20. The State moved to consolidate this charge with the other charging document filed six months earlier. *Id.* at 19–20. The circuit court denied the motion and advised that there would be no postponement of trial. *Id.* at 20. On the trial date, four days before the *Hicks* date, the State *nol prossed* all charges but the first-degree rape charge. *Id.* at 320. It subsequently filed a new charging document that included a first-degree rape charge. *Id.* The circuit court denied Alther's motion to dismiss. *Id.* at 321–22.

This Court reversed. We noted that the *nol pros* occurred four days before the *Hicks* date, and because there was no way that the State could refile charges and try those charges within those four days, the *nol pros* was done not to cure a defective indictment but for strategic reasons, and the circuit court had stated that it would not grant a postponement if

16

one were requested, essentially finding no good cause for a postponement. *Id.* at 336–37.[4] The Court held that the *nol pros* "was for the purpose of avoiding the court's order denying consolidation, and its necessary effect, four days before the end of the 180 day period, was to circumvent the 180-day rule." *Id.* at 338.

In *Price*, 385 Md. at 266, the State moved for a continuance one week before the trial date. The prosecutor stated that DNA analysis of evidence had not been received, and the *Hicks* date was more than three months away. *Id.* at 266. The circuit court denied the motion for a continuance, and the State *nol prosssed* the charges. *Id.* When the State filed a new indictment, the defendant filed a motion to dismiss. *Id.* at 267. The Court of Appeals held that, although the *nol pros* did not have the "necessary effect" of circumventing the 180-day requirement because there were 94 days left on the *Hicks* time period at the time of the *nol pros*, the *nol pros* had the purpose of circumventing the requirements of the statute and rule. *Id.* at 268, 278–79. The Court explained:

> In the case *sub judice*, the State sought and was refused a continuance, the administrative judge expressly finding no good cause for one. The effect of that ruling was to mandate that trial proceed, as scheduled. The consequence of the State not going forward or not producing evidence was dismissal of the case or an acquittal. When the State nolle prossed the case, it was, as the State concedes, to avoid those results. Thus, the State is correct, the nolle pros did not have the "necessary effect" of circumventing the 180 day requirement of the statute and the rule; rather, it was for the purpose of

---

[4] In *State v. Glenn*, 299 Md. 464 (1984), the prosecutor *nol prossed* charges after he determined that there was a defect in the charges and defense counsel said he would object to an amendment of the charging document. The Court of Appeals held that the prosecutor's purpose in *nol prossing* the charges was not to circumvent the 180-day rule but because of a legitimate belief that the charging documents were defective. *Id.* at 467. *Accord Huntley*, 411 Md. at 301 (no purpose to circumvent statute and rule where *nol pros* is entered based on denial of motion to amend a flawed indictment, absent a showing of bad faith).

circumventing, and, indeed, that intention was achieved, the requirement of the statute and the rule that trials proceed except when there has been a finding of good cause by the administrative judge. Accordingly, we agree with the Court of Special Appeals that "the purpose for entering the nol pros in the case under consideration was to circumvent the authority and decision of the administrative judge." *State v. Price,* 152 Md. App. 640, 654, 833 A.2d 614, 623 (2003).

*Id.* at 278–79. *Accord Huntley*, 411 Md. at 293 n.9 (The "purpose" prong applies when the State seeks to circumvent a ruling by the court that "exercises control over the court's calendar.").

With this background in mind, we address the arguments in this appeal.

## C.

### Analysis

To begin our analysis, we note that the 180-day deadline on the first indictment in this case was March 27, 2019. Appellant's attorney entered her appearance on the first indictment on September 28, 2018. March 27, 2019, is 180 days from that date. When the State *nol prossed* the charges in the first indictment on January 30, 2019, there were 56 days left before March 27, 2019, the 180-day deadline.

The State argues that the circuit court correctly denied appellant's motion to dismiss based on *Hicks*. It asserts that the 180-day deadline ran from the second indictment because appellant did not meet his burden to prove that the decision to *nol pros* the counts in the first indictment "was done with the purpose or necessary effect of circumventing the 180-day deadline."

Appellant acknowledged at oral argument that the *nol pros* here did not have the necessary effect of evading the 180-day requirement. We agree. As illustrated in the cases

18

discussed, *supra*, where the *nol pros* is entered when there is a significant amount of time before the 180-day deadline, and there are options to try the case in accordance with the statute and the rule or obtain a postponement based on good cause, the necessary effect of the *nol pros* is not to circumvent the statute and the rule. As indicated, at the point the initial charges were *nol prossed*, there were 56 days remaining to try the case within the 180-day deadline. Thus, as appellant concedes, the *nol pros* did not have the necessary effect of circumventing the 180-day requirement.

Appellant contends, however, that the "purpose" of the *nol pros* was to evade the requirement of the statute and rule. He asserts that the State had several options after it received the testing results indicating the presence of fentanyl in the seized heroin, including "seek[ing] a continuance to obtain a superseding indictment." He asserts that the State did not do that "likely for strategic reasons—because continuances are often denied close to trial." Appellant argues that the purpose of the *nol pros* was to "sidestep a showing of good cause to avoid an adverse determination."

The cases on which appellant relies, *Ross*, 117 Md. App. at 361–62, 369–70, and *Price*, 385 Md. at 266, both involved situations where the State requested a continuance, the administrative judge denied the request, and the State then entered the *nol pros*. In these cases, the purpose of the *nol pros* was to circumvent the "requirement of the statute and the rule that trials proceed except when there was been a finding of good cause by the administrative judge." *Price*, 385 Md. at 279. *Accord Ross*, 119 Md. App. at 370. As the Court of Appeals recently explained, it is "those types of scenarios, where the nol pros is

used as a clear stand-in for a failed continuance request, that the prophylactic analysis of *Curley* and the sanction of *Hicks* were designed to address." *Huntley*, 411 Md. at 296–97.

Here, by contrast, the State did not *nol pros* the charges after a request for a continuance was denied. There was no evidence that it was seeking to "circumvent a ruling exercising control over the court's calendar." *See Huntley*, 411 Md. at 293 n.9. Indeed, the circuit court expressly noted that the *nol pros* did not follow the denial of a postponement, and in denying the motion to dismiss, it implicitly found that the purpose of the *nol pros* was not to circumvent the statute or the rule. Appellant does not point to anything in the record from which we could conclude that the circuit court's finding in this regard was clearly erroneous.

Accordingly, because neither the purpose of the *nol pros* nor the necessary effect was to circumvent Md. Rule 4-271(a) or CP § 6-103, the 180-day deadline ran from the filing of the second indictment. The circuit court properly denied appellant's motion to dismiss based on the requirements of the statute and the rule.[5]

---

[5] The decision whether to enter a *nol pros* on an existing indictment or seek a continuance or other relief is a tactical decision for the State's Attorney's Office. That decision, however, could be problematic for the State if the court determines that the purpose of the *nol pros* was to circumvent the statute and the rule. Similarly, it could weigh against the State with respect to a constitutional speedy trial claim if the circuit court finds that the State did not act in good faith. *See Singh v. State*, 247 Md. App. 322, 339–341 (2020); *Greene v. State*, 237 Md. App. 502, 513–14 (2018). As indicated, with respect to the 180-day requirement, there was no such finding here, and we are not addressing whether there was any violation of appellant's constitutional right to a speedy trial.

20

## II.

## Possession of a Mixture of Heroin and Fentanyl

Appellant contends that his conviction and sentence for possession of a mixture of heroin and fentanyl with intent to distribute was improper. He makes two arguments in this regard. First, he argues that his conviction was invalid because CR § 5-608.1 "is a sentence enhancement, not a standalone crime." Second, he contends that, if his conviction pursuant to CR § 5-608.1 was proper, it should have merged with his conviction pursuant to CR § 5-602 at sentencing. We will address each issue, in turn.

## A.

## Background

When appellant was arrested, the police found 42 gel capsules. Testing of the capsules revealed a mixture of heroin and fentanyl. Appellant was convicted of two drug possession charges.

First, he was convicted of possession with intent to distribute heroin in violation of CR § 5-602, which provides that a person may not:

(1) distribute or dispense a controlled dangerous substance; or

(2) possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance.

The sentence for a conviction pursuant to § 5-602 is set forth in CR § 5-608(a), which provides in relevant part:

(a) Except as otherwise provided in this section, a person who violates a provision of §§ 5-602 through 5-606 of this subtitle with respect to a Schedule I or Schedule II narcotic drug is guilty of a felony and on

21

conviction is subject to imprisonment not exceeding 20 years or a fine not exceeding $15,000 or both.

Second, appellant was convicted of possession with intent to distribute a mixture of heroin and fentanyl in violation of CR § 5-608.1. That statute provides as follows:

(a) A person may not knowingly violate § 5-602 of this subtitle with:

(1) a mixture that contains heroin and a detectable amount of fentanyl or any analogue of fentanyl; or

(2) fentanyl or any analogue of fentanyl.

(b) A person who violates this section is guilty of a felony and, in addition to any other penalty imposed for a violation of § 5-602 of this subtitle, on conviction is subject to imprisonment not exceeding 10 years.

(c) A sentence imposed under this section shall be consecutive to and not concurrent with any other sentence imposed under any other provision of law.

As indicated, the court sentenced appellant to 20 years for possession of a handgun with a nexus to a drug trafficking crime; a consecutive suspended sentence of 25 years for possession of heroin with intent to distribute, in violation of CR § 5-602 (count 12); and a consecutive suspended sentence of ten years for knowingly possessing a heroin/fentanyl mixture with intent to distribute, in violation of CR § 5-608.1 (count 16).

**B.**

**CR § 5-608.1**

Appellant contends that his conviction pursuant to CR § 5-608.1 for possession with intent to distribute a mixture of fentanyl and heroin is "invalid because [CR] § 5-608.1 is a sentencing enhancement, not a standalone crime." He asserts that the State failed to charge

22

him with a cognizable offense when it indicted him on this offense, and therefore, the court did not have jurisdiction to convict him of this charge.[6]

The State disagrees. It contends that the plain language of CR § 5-608.1 shows that it established a crime, as opposed to a mere sentence enhancement.

CR § 5-608.1 was enacted in 2017. *See* 2017 Md. Laws, Ch. 569. We could not find, nor did the parties cite, any reported decision addressing the question raised here, i.e., whether CR § 5-608.1 created a new crime or whether it is merely a sentencing enhancement for a violation of CR § 5-602.[7]

This question raises an issue of statutory interpretation. "The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature." *Bey v. State*, 452 Md. 255, 265 (2017) (quoting *State v. Johnson*, 415 Md. 413, 421–22 (2010)). In ascertaining the intent of the legislature, we apply the following well-settled rules of statutory interpretation:

> [W]e begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain

---

[6] Appellant did not make this argument below. Because the claim is jurisdictional, however, and not subject to waiver, we will address it. *See State v. Chaney*, 304 Md. 21, 25 (1985) ("[A] court is without power to render a verdict or impose a sentence under an indictment which does not charge a cognizable offense[,]" and such a claim "is jurisdictional and may be raised at any time."), *cert. denied*, 474 U.S. 1067 (1986); Md. Rule 4-252(d).

[7] In *Singh*, 247 Md. App. at 332 n.7, this Court stated in a footnote, as we hold today, that CR § 5-608.1 "created an additional offense," but the issue whether the statute created an offense or a sentencing enhancement was not raised in that case.

and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

\* \* \*

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose and relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*Id.* at 265–66. *Accord Phillips v. State*, 451 Md. 180, 196–97 (2017).

In accordance with these rules of statutory construction, we begin our analysis with the language used in CR § 5-608.1. The plain language of the statute shows the intent that § 5-608.1 would establish a separate offense, for which a defendant may be separately charged, convicted, and sentenced. This intent is shown in several ways.

Initially, the statute sets forth the elements of an offense, i.e., knowingly violating CR § 5-602 with a mixture that contains heroin and fentanyl. CR § 5-608.1(a). Moreover, the statute provides that anyone "who violates this section is guilty of a felony," and "upon conviction" of the offense, is subject to a penalty of ten years of imprisonment, "in addition to any other penalty imposed for a violation of [CR] § 5-602." CR § 5-608.1(b). Finally, subsection (c) provides that a sentence imposed for a violation of CR § 5-608.1(a) "shall be" consecutive to any other sentence imposed. CR § 5-608.1(c).

24

The plain language of the statute makes clear that CR § 5-608.1 establishes a crime separate from that set forth in CR § 5-602. Because the plain language is unambiguous, we will "apply the statute as written without resort to other rules of construction." *Bey*, 452 Md. at 265.

Accordingly, we hold that CR § 5-608.1 created a new offense, which can result in a conviction separate from a conviction pursuant to CR § 5-602. The circuit court had jurisdiction to convict and sentence appellant on this charge.

## C.

## Merger

Appellant next contends that, assuming a charge of violating CR § 5-608.1 is a cognizable offense, his conviction pursuant to that statute should have merged at sentencing with his conviction, pursuant to CR § 5-602, for possession with intent to distribute heroin. He argues that both convictions arose from the same act of possession, and, "[b]y failing to merge these convictions at sentencing, the court allowed [appellant] to be punished twice for the same offense."

The State contends that the trial court properly imposed separate sentences for the two possession convictions because "[m]ultiple punishments for the same conduct do not offend double jeopardy principles where the legislature has specifically authorized multiple punishments." It asserts that this was the clear intention of CR § 5-608.1, and merger of the offenses would render CR § 5-608.1 "a nullity" because charges pursuant to CR § 5-608.1 and § 5-602 would always merge and functionally void the additional ten years contemplated by the statutory scheme.

25

"Merger is the common law principle that derives from the protections afforded by the Double Jeopardy Clause." *State v. Frazier*, 469 Md. 627, 641 (2020). "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and the common law of Maryland guard against 'multiple punishments for the same conduct, unless the legislature clearly intended to impose multiple punishments.'" *Morris v. State*, 192 Md. App. 1, 39 (2010) (footnote omitted) (quoting *Jones v. State*, 357 Md. 141, 156 (1999)). Here, it is undisputed that both convictions arose from the same conduct, i.e., the criminal act of possessing the gel capsules with intent to distribute.

"Maryland recognizes three grounds for merging a defendant's convictions: (1) the required evidence test; (2) the rule of lenity; and (3) 'the principle of fundamental fairness.'" *Carroll v. State*, 428 Md. 679, 693–94 (2012) (quoting *Monoker v. State*, 321 Md. 214, 222–23 (1990)). Appellant relies on two of those grounds in arguing that merger was required.

Initially, appellant contends that his conviction for possession of heroin with an intent to distribute should have merged into his conviction for possession with intent to distribute a mixture that contained heroin and fentanyl under the required evidence test. The Court of Appeals has described the required evidence test as follows:

> If each offense requires proof of a fact which the other does not, the offenses are not the same and do not merge. However, if only one offense requires proof of a fact which the other does not, the offenses are deemed the same, and separate sentences for each offense are prohibited.

*Twigg v. State*, 447 Md. 1, 13 (2016) (quoting *Nightingale v. State*, 312 Md. 699, 703 (1988), *abrogated by statute*).

26

Assuming that merger of these crimes generally would be appropriate under the required evidence test, there is an exception to this merger requirement where "the General Assembly has specifically or expressly authorized multiple punishments." *State v. Lancaster*, 332 Md. 385, 394 (1993). As the Court of Appeals has explained:

> Where the legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct, cumulative punishment may be imposed under the statutes in a single trial. *See Missouri v. Hunter*, 459 U.S. at 368, 103 S. Ct. 673 [(1983)]. The Supreme Court has said that with respect to cumulative punishments imposed in a single trial, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.* at 366, 103 S. Ct. 673. The bottom line in resolving "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to impose." *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

*Id. Accord Holbrook v. State*, 364 Md. 354, 369 (2001) (Where a legislature "specifically authorizes cumulative punishment under two statutes irrespective of whether they prohibit the same conduct, such punishment may be imposed under the statutes in a single trial.").

Here, as we have explained, the legislature specifically authorized multiple punishments when the single act of possession with the intent to distribute violates CR §§ 5-602 and 5-608.1. Indeed, as the State points out, "that was the entire point for enacting [CR] § 5-608.1 in the first place; *i.e.*, to allow for more severe punishment in cases where a person knowingly violates [CR] § 5-602 with a heroin/fentanyl mixture." Because the legislature clearly authorized multiple punishments, merger is not required under the required evidence test.

27

Appellant next argues that principles of "fundamental fairness" compel merger in this case.[8] "In deciding whether fundamental fairness requires merger, we have looked to whether the two crimes are 'part and parcel' of one another, such that one crime is 'an integral component' of the other." *Carroll*, 428 Md. at 695 (quoting *Monoker*, 321 Md. at 223). Only in rare circumstances does fundamental fairness require merger. *Id.*

We first address the State's argument that this issue is not preserved for review because it was not raised below. When a court fails to merge a sentence when it is required, this constitutes an illegal sentence as a matter of law. *Britton v. State*, 201 Md. App. 589, 598–99 (2001). Because the court may correct an illegal sentence at any time, *see* Md. Rule 4-345(a), we will review a claim of merger based on the required evidence or the rule of lenity even if it was not raised below. *Pair v. State*, 202 Md. App. 617, 625 (2011).

Merger on the basis of fundamental fairness, however, is a fact-driven test. *Id.* at 645. Unlike the required evidence test and the rule of lenity, which can "be decided as a matter of law" based on the charges, merger based on fundamental fairness is a "fluid test dependent upon a subjective evaluation of the particular evidence in a particular case." *Id.* at 649. As such, a failure to merge a sentence under the fundamental fairness test does not result in an "illegal sentence," and therefore, to preserve the issue for appeal the argument

---

[8] Appellant does not argue, for good reason, that merger is required pursuant to the rule of lenity, which requires merger where it is not clear if the legislature intended two crimes arising out of a single act to be punished separately. *See Latray v. State*, 221 Md. App. 544, 555 (2015) (If the Court is "uncertain as to what the Legislature intended" with regard to separate or single punishments, "we turn to the so-called 'Rule of Lenity,' by which we give the defendant the benefit of the doubt.") (quoting *Walker v. State*, 53 Md. App. 171, 201 (1982)).

must be made to the trial court. *Id. Accord Clark v. State*, 246 Md. App. 123, 139 (The merger theory of fundamental fairness "does not enjoy the same 'procedural dispensation of [Md.] Rule 4-345(a)' that permits correction of an illegal sentence without a contemporaneous objection[,]" and therefore, contemporaneous objection is required for preservation of this argument on appeal.) (quoting *Potts v. State*, 231 Md. App. 398, 414 (2016)), *cert. granted*, 470 Md. 205 (2020).

Here, appellant did not argue below that the imposition of separate sentences under the two statutes was fundamentally unfair. Accordingly, this issue is not preserved for review. *See Clark*, 246 Md. App. at 139; *Pair*, 202 Md. App. at 649. *Cf. Latray v. State*, 221 Md. App. 544, 555 (2015) (reviewing claim for merger based on fundamental fairness despite the failure to raise it at sentencing).

Even if the issue were properly before this Court, we would conclude that merger is not warranted under principles of fundamental fairness. It is not fundamentally unfair to impose a sentence authorized by the legislature. *See State v. Wilson*, 471 Md. 136, 186 (2020) (Witness tampering and obstruction of justice offenses did not merge under principle of fundamental fairness where merger would negate plain language and intent of the statute.); *Clark*, 246 Md. App. at 139 (Fundamental fairness did not compel merger, in part because the "legislature obviously intended to punish [the] two acts separately, and not under one sentence."). The circuit court properly imposed separate sentences for appellant's separate convictions pursuant to CR §§ 5-602 and 5-608.1.

**Motion to Exclude Statement**

On April 19, 2019, appellant filed a motion *in limine* to exclude a post-arrest statement he made to the officer transporting him to the detention center. Appellant stated that he "would have shot it out" with police if the handgun that was found in his hotel room had been on his person when the search warrant was executed.[9] He argued that the statement should be excluded because it was irrelevant and unduly prejudicial.

Appellant contends that the circuit court abused its discretion in denying this motion, asserting that the prejudicial effect of the statement substantially outweighed its probative value. Although he acknowledges that the statement "was the most prominent piece of evidence that [appellant] constructively possessed the firearm," he argues that it raised an improper inference that he had a "propensity to use violence against law enforcement."

The State contends that the circuit court properly exercised its discretion in denying the motion. It argues that the statement was relevant to the violation of CR § 5-621(b)(1), and its relevance was not outweighed by any danger for unfair prejudice.

Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5-401. Relevant evidence generally is

---

[9] Appellant also filed a motion to suppress, arguing that the statement was inadmissible because it was involuntarily made. That motion was denied, and the ruling is not challenged on appeal.

admissible. Rule 5-402. It may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 5-403. As this Court has explained:

> "Evidence is never excluded merely because it is 'prejudicial.' If prejudice were the test, no evidence would ever be admitted. Parties . . . have a right to introduce prejudicial evidence. Probative value is outweighed by the danger of 'unfair' prejudice when the evidence produces such an emotional response that logic cannot overcome prejudice or sympathy needlessly injected into the case."

*Moore v. State*, 84 Md. App. 165, 172 (quoting J. Murphy, *Maryland Evidence Handbook*, § 509, p. 160 (1989)), *cert. denied*, 321 Md. 385 (1990).

The Court of Appeals recently explained the appropriate standard of review as a two-step process:

> First, we consider whether the evidence is legally relevant which is a conclusion of law that we review *de novo*. *Portillo Funes v. State*, 469 Md. 438, 478, 230 A.3d 121 (2020) (citing *Ford v. State*, 462 Md. 3, 46, 197 A.3d 1090 (2018)) ("An appellate court reviews *de novo* a trial court's determination as to whether evidence is relevant."). After determining whether the evidence in question is relevant, we consider whether the trial court abused its discretion by admitting relevant evidence which should have been excluded as unfairly prejudicial. Thus, the trial judge's ruling on the admissibility of evidence under Rule 5-403 is reviewed for abuse of discretion. *Id.* The standard of review for "[a]n abuse of discretion occurs where no reasonable person would take the view adopted by the circuit court." *Williams v. State*, 457 Md. 551, 563, 179 A.3d 1006 (2018) (citing *Fuentes v. State*, 454 Md. 296, 325, 164 A.3d 265 (2017)). Appellate "courts 'are generally loath to reverse a trial court unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion.'" *Portillo Funes*, 469 Md. at 479, 230 A.3d 121 (quoting *Merzbacher v. State*, 346 Md. 391, 404–05, 697 A.2d 432 (1997)).

*Montague v. State*, 471 Md. 657, 673–74 (2020).

31

Here, appellant's statement clearly was relevant with respect to the firearms charges against him. Appellant was charged with violating CR § 5-621(b)(1), which provides that, "[d]uring and in relation to a drug trafficking crime, a person may not . . . possess a firearm under sufficient circumstances to constitute a nexus to the drug trafficking crime." The evidence showed that appellant advised the police that the room contained drugs and a handgun, which showed his constructive possession of the handgun seized. *See Neal v. State*, 191 Md. App. 297, 316, *cert. denied*, 415 Md. 42 (2010) ("A person has constructive possession over contraband when he or she has dominion or control over the contraband itself or over the premises or vehicle in which it was concealed."). The statement that appellant would have "shot it out" if the handgun had been on his person, as opposed to under the bed, was relevant to support the inference that appellant possessed the handgun to protect against the seizure of his drugs, satisfying the nexus requirement.

Appellant does not dispute that the evidence was relevant. Rather, he asserts that the unfair prejudice of the statement outweighed its probative value because the statement created an impermissible inference that he had a propensity for violence. Although the admission of the statement certainly was prejudicial to appellant, we cannot conclude that the circuit court abused its discretion in determining that it was not unfairly prejudicial to an extent that outweighed the probative value of the evidence. We uphold the court's ruling denying appellant's motion to exclude the statement.

## IV.

### Motion to Withdraw Plea Agreement

Appellant's next contention involves his motion to withdraw his plea agreement, which he filed after his conviction, but before sentencing. Appellant contends that the circuit court erred in denying his motion to withdraw his plea because "the proffered evidence contained a dispute of material fact." Specifically, he alleges that there was a dispute of material fact regarding whether he "possessed a firearm on the date alleged in the indictment." He notes that the indictment lists the offense date as August 21, 2018, when law enforcement seized a gun during the execution of the search warrant, but the firearm test certification submitted with the statement of facts certified the offense date as July 23, 2018.

The State contends that the circuit court properly exercised its discretion in denying appellant's motion to withdraw his plea. It does not dispute that the firearms examiner erroneously listed July 23, 2018, as the date of the offense on the certification, but it argues that this certificate had no bearing on appellant's plea. It notes that both the indictment and the agreed upon statement of facts stated that the handgun was recovered on August 21, 2018, and therefore, appellant was charged with, and convicted of, possessing the gun on August 21, 2018.

Md. Rule 4-242(h) provides that, "[a]t any time before sentencing, the court may permit a defendant to withdraw a plea of guilty, a conditional plea of guilty, or a plea of nolo contendere when the withdrawal serves the interest of justice." This Court reviews

the denial of a motion to withdraw a plea for abuse of discretion. *See Blinken v. State*, 291 Md. 297, 309 (1981), *cert. denied*, 456 U.S. 973 (1982).

Initially, we note that the Rule, by its terms, applies only to a "plea of guilty, a conditional plea of guilty, or a plea of nolo contendere." Rule 4-242(h). Appellant did not enter one of those pleas.

A guilty plea is "an unconditional confession of guilt," and appellate review is limited. *Bishop v. State*, 417 Md. 1, 17–18 (2010). A conditional guilty plea reserves the right to appeal specified issues, and if the defendant prevails on appeal, he or she may withdraw the plea. Rule 4-242(d). A plea of nolo contendere is a "plea by which the defendant does not contest or admit guilt." *Id.* at 18 (quoting Black's Law Dictionary 1147, 1269 (9th ed. 2009). This plea waives many appellate rights, but it preserves the right "to plead and prove his innocence in a civil action." *Id.*

Here appellant did not enter any of the pleas covered by the rule. Rather, appellant pleaded *not guilty* pursuant to an agreed statement of facts. Under an agreed statement of facts, the State and the defense agree to the ultimate facts, and the court merely applies the law to the agreed upon facts. *Bishop*, 417 Md. at 21. *Accord State v. Thomas*, 464 Md. 133, 140 (2019). By entering such a plea, the accused retains the right to argue legal issues, including the sufficiency of the evidence. *Bishop*, 417 Md. at 22. If the prosecutor fails to present evidence to support all elements of the crime, an acquittal will result. *Id.* at 23 (collecting cases).

Rule 4-242(h) does not authorize withdrawal of a plea of not guilty pursuant to an agreed statement of facts, presumably because the conviction is the result of the court's

decision based on the facts, as opposed to the defendant's acknowledgment of, or failure to contest, his or her guilt. We hold that, where there is no suggestion that the plea was anything other than a plea of not guilty pursuant to an agreed statement of facts, the defendant cannot move to withdraw the plea and void the conviction pursuant to Rule 4-242(h). *See Hamm v. State*, 72 Md. App. 176, 187 n.6 (1987) (Defendant's plea of not guilty on an agreed statement of facts was "not the functional equivalent of a guilty plea," and "even if it were, we do not suggest that it would be subject to withdrawal under Md. Rule 4–242(f)."), *cert. denied*, 311 Md. 285 (1987), *cert. denied*, 488 U.S. 843 (1988).

In any event, even if the Rule was applicable, we would conclude that the circuit court properly exercised its discretion in denying the motion on the ground that it was not "in the interests of justice to allow [appellant] to withdraw his proceeding whereby he entered a not guilty plea but agreed to submit on the statement of facts read into the record." As the State notes, the indictment charged appellant with possessing the handgun on August 21, 2018, and the agreed statement of facts provided that the handgun was found in the hotel room on August 21, 2018. There was no dispute of fact that appellant possessed the gun on August 21, 2018. That the firearm examiner made a clerical error on the date of the offense in his certificate certifying that the firearm was operable did not generate a dispute of fact. Accordingly, the circuit court did not abuse its discretion in denying appellant's motion to withdraw the prior proceedings.

## V.

## Sufficiency of the Evidence

Appellant's last contention is that there was not sufficient evidence to support his conviction for constructive possession of the CDS concealed in the nightstand in the hotel room. He asserts that the hotel room was shared with another person, and the drugs were found outside of plain view and not shown to be in his control.

The State contends that appellant has waived this contention because he did not object at the plea hearing when the State proffered to the court, prior to proceeding on the agreed statement of facts, that appellant did not claim that the facts did not support the charges. In any event, the State asserts that appellant's argument is meritless, noting that appellant explicitly told the officers that all the CDS in the hotel room belonged to him.

With respect to the waiver argument, we recently explained that there is no preservation requirement for sufficiency claims in cases tried without a jury. *Rivera v. State*, 248 Md. App. 170, 179, 183 (2020). The State cites no cases to support its contention to the contrary. Accordingly, we turn to the merits.

"In considering the legal sufficiency of the evidence following a non-jury trial, the appellate court must determine whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Moore v. State*, 189 Md. App. 90, 97 (2009) (quoting *State v. Albrecht*, 336 Md. 475, 479 (1994)), *aff'd* 424 Md. 118 (2011). This Court has explained the essential elements of constructive possession of contraband as follows:

36

The State has the burden to prove that the accused had actual or constructive possession and control of the contraband. *See Taylor v. State*, 346 Md. 452, 458–59, 697 A.2d 462 (1997). "Possess" under § 5–101(u) of the Criminal Law Article "means to exercise actual or constructive dominion or control over a thing by one or more persons." "'Control' of a controlled dangerous substance has been defined as the exercise of a 'restraining or directing influence over' the thing allegedly possessed." *Taylor*, 346 Md. at 457, 697 A.2d 462; *see McDonald v. State*, 347 Md. 452, 474, 701 A.2d 675 (1997).

Contraband need not be found on a defendant's person in order to establish possession. *State v. Suddith*, 379 Md. 425, 432, 842 A.2d 716 (2004). To prove possession of contraband, whether actual or constructive, joint or individual, the State must prove, beyond a reasonable doubt, that the accused knew "of both the presence and the general character or illicit nature of the substance." *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988). Thus, "[a]n individual's knowledge of the contraband is a key element in finding that individual guilty of possessing it . . ." *Suddith*, 379 Md. at 432, 842 A.2d 716. Indeed, knowledge of the presence of an object is generally a prerequisite to the exercise of dominion and control. *Dawkins*, 313 Md. at 649, 547 A.2d 1041.

*Handy v. State*, 175 Md. App. 538, 564, *cert. denied*, 402 Md. 353 (2007).

We recently explained that the "controlled set of guidelines" for determining constructive possession is as follows:

1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Moseley v. State*, 245 Md. App. 491, 506 (2020) (emphasis omitted) (quoting *Folk v. State*, 11 Md. App. 508, 518 (1971)).

Here, appellant was arrested in the hotel room where the CDS was found, and thus, he was in close proximity to the contraband. *See id.* Moreover, when asked whether there

was anything illegal in the room, he directed the officers to the nightstand, indicating that there were "a lot of drugs in the nightstand," and that "they were all [his]." This showed direct knowledge of both the presence of the CDS and the illicit nature of the items. *Handy*, 175 Md. App. at 564. Accordingly, a rational trier of fact could have found that he had constructive possession of the CDS for which he was convicted.

**JUDGMENTS OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1232s19cn.pdf